THOMPSON, J.
 

 Mrs. Aléxina Sinclair McBurney, a widow 76 years old, died at her residence in this city on August 21, 1924, leaving an estate consisting of real estate, bonds, stocks, and money, all of which was inventoried and appraised at $717,937.52.
 

 The decedent left no forced heirs, the nearest of kin being five cousins all of whom resided in Canada.
 

 On. December 2, 1921, Mrs. McBurney executed a last will in olographic form by which she disposed of all of her property and designated Mr. John Davidson, Dr. John C. Barr,- and Dr. E. F. Bacon as executors with seizin and without bond. The will was •probated, and the three executors named
 
 *761
 
 were confirmed and qualified on September 8, 1924.
 

 On account of a possible conflict between his duty as executor and his interest as legatee under the will and his claim under donations inter vivos, Dr. Bacon resigned the trust of executor.
 

 The legality and regularity of the will as to form was made the subject of attack ■by the heirs in the original proceedings in the court below, but that attack has been .abandoned.
 

 The will makes some 14 special legacies and a universal bequest of funds deposited in certain banks after certain designated legacies out of said moneys had been satisfied.
 

 The only dispositions of the will contested in this court are: (1) The one: “Everything in my bank boxes, money, stocks, bonds, are to be for Dr. E. P. Bacon. The bank boxes are in the Hibernia and Whitney safety deposit department.” And: (2) The disposition with respect to the money on deposit in the ■savings department of the Bank of Montreal .and the savings department of the Imperial Bank of Toronto, Canada.
 

 After the will had been probated, four of the cousins of Mrs. McBurney filed a petition attacking the legacies contained in the will in favor of the Charity Hospital, Marion Sinclair, one of the cousins, and Dr. Bacon, on the grounds: (1) That the disposition to endow a hospital for consumptives in connection with the Charity Hospital was null for uncertainty and lack of existing legatee capable of taking the same; (2) that the legacy to Dr. Bacon of the contents of the bank boxes -was null for the reason that Dr. Bacon was a doctor of medicine in attendance as such on Mrs. McBurney during her last illness; and (3) that the legacies directed to be paid out of the money of the deceased on deposit in the banks in Canada were null for the reason that before her death Mrs. McBurney had disposed of the said funds contrary to the intent of the legacies.
 

 Thereafter the two executors brought suit against Dr. Bacon in which it was alleged that certain gifts inter vivos of money, bonds, and stocks, claimed by Dr. Bacon to have been made to him by the deceased, were not in truth gifts, but that the moneys and other things mentioned by the ¡executors were received by Dr. Bacon from Mrs. McBurney as her agent and are property of her succession. They further allege that if they were gifts they were null for the reason that Dr. Bacon attended the deceased professionally during her last illness and for the further reason that they were not made by notariat act.
 

 The cash claimed to have been received by Dr. Bacon as agent totals the sum of $27,-761.62, and the bonds and stocks amount to $100,664.43.
 

 The executors therefore prayed for judgment against Dr. Bacon for the amount of cash received as already stated and that he be ordered to turn over to the executors the said stocks and bonds. They asked for further judgment for $1,040, being the amount received by Dr. Bacon as the difference between 81 bonds of Canada maturing 1933 which were sold by Dr. Bacon and the same number of Canadian bonds of 1934 purchased by him.
 

 All five of the legal heirs intervened in this proceeding by the executors and made substantially the same allegations.
 

 Dr. Bacon in answer to the demand of the heirs and executors, admitted the receipt of the moneys and the possession by him of the stocks and bonds. He alleged that the cash had been given to him by Mrs. McBurney in the form of checks as a manual gift, and that all of the stocks and bonds referred to had also been given to him as manual gifts by Mrs. McBurney. He denied that he had professionally attended Mrs. McBurney during
 
 *763
 
 the sickness of which she died, and alleged that the legacy in the will and manual gifts were valid and legal.
 

 After a trial there was judgment against Dr. Bacon for $11,169.62, representing an amount drawn by him from the bank in Canada and the profit realized by him on the sale or exchange of the Canadian bonds. He was also ordered to turn over to the executors the $80,000 in Canadian bonds, issue of 1934, together with all interest collected therein, or, in default thereof, that he pay said executors the value of said bonds to wit, $83,-404.43.
 

 It was held that the special legacies to be paid out of the money in the Canada banks had lapsed for the reason that Mrs. Mc-Burney had caused the said money to be withdrawn and practically all of it to be invested in the bgnds referred to.
 

 Except as herein noted the demands of the heirs and executors were rejected.
 

 Erom this judgment, the executors, Dr. Bacon and the Presbyterian Hospital, claiming to be universal -residuary legatee, have appealed.
 

 The heirs have not appealed nor have they answered the appeal. '
 

 In their brief, counsel for the heirs frankly admit that they were unable to establish the fact that Dr. Bacon attended Mrs. Mc-Burney professionally in her last illness, lienee the demand of the heirs for the nullity of the legacies to Dr. Bacon on that score may be accepted as abandoned.
 

 Nor can the h,eirs have the judgment changed in their favor in any other respect for the reason already stated.
 

 Their only interest now as appellees is in maintaining the judgment in so far as it went against Dr. Bacon. .
 

 Otherwise, the contest is limited to the executors, the Presbyterian Hospital, and Dr. Bacon. •
 

 We have carefully examined the evidence as to the alleged professional relations of Dr. Bacon to Mrs. McBurney during the illness of which she died, and are constrained to hold with the trial judge that the preponderance of the evidence is against the contention made by the executors and originally by the heirs that Dr. Bacon treated Mrs. McBurney professionally or was her attending physician during the last illness.
 

 The attack on the legacy to Dr. Bacon and the manual gifts made to him on this score must therefore fall.
 

 The same may be said with respect to the claim of the Presbyterian Hospital in so far as this ground of attack on the will is made by said institution.
 

 Moreover, the Presbyterian Hospital was not made a universal legatee under the will, but only a residuary legatee of the funds in the banks of Canada after certain specified legacies from these funds were paid.
 

 The claim as universal residuary legatee is based on the following provision of the will:
 

 “About my money in Toronto, Canada. In the savings department in the Bank of Montreal, Toronto, Canada, and in the savings department of Imperial Bank Toronto, Canada, after the legacies are all paid as follows:”
 

 Then follows a number of special legacies to be paid out of said funds, the will concluding as follows:
 

 “After these bequests have been made, I wish the remainder to go to the Presbyterian Hospital of New Orleans, Louisiana," to be called the Margaret and Marion Sinclair fund.”
 

 This language is clear and unambiguous and can be subject to only one interpretation, and that is that after the special legacies were paid out of that fund on deposit in said banks the remainder or that fund was to go to the Presbyterian Hospital. There is therefore no room for the contention that said institution was made universal legatee of the entire estate not legally disposed of.
 

 Having reached this conclusion the
 
 *765
 
 Presbyterian Hospital is therefore without interest to attack tl\e legacy in the will made to Dr. Bacon, nor has said institution any interest in attacking any of the alleged manual gifts other than the ones claimed to have been made o.ut of the money in the Canadian banks, and its right to urge the nullity of the claimed manual gifts of these funds is contingent on the fact that said funds were withdrawn by Dr. Bacon without authority from Mrs. McBurney.
 

 It is conceded by the attorneys for the executors in their original brief that the money was withdrawn from the two banks in Canada and invested in the Canada bonds by Dr. Bacon acting for and as the agent of Mrs. McBurney.
 

 If this be true, then the legacy to the Presbyterian Hospital in so far as this money is concerned lapsed or was revoked for the simple reason that there was no money in the said banks to pass under the will when the will took effect, which was at the death of the testatrix.
 

 The legacy was of the money in the two banks and was not a legacy of a specified sum of money to be paid out of the general funds of the estate.
 

 In the Succession of Dr. Batchelor, 48 La. Ann. 278, 19 So. 283, this court said, quoting from the syllabus:
 

 “Tlie testator had bequeathed a promissory note to certain legatees named. The note, after the date of the will, ■ was collected at the instance of the testator, and the amount placed to his credit.
 

 “The legacy was of a note and not of a sum of money. There was revocation of the legacy.”
 

 In the body of the decision it was said:
 

 “Thus, by selling the property specifically bequeathed the testator manifests a change of intention which operates as a revocation of the legacy; for the property, in so far as he was concerned, has changed its character from'the thing sold to the price stipulated.”
 

 In the instant case the money was withdrawn by check and part of it invested in bonds and part in a New York exchange — a complete change in the character of the thing bequeathed. The act of the testatrix clearly evidenced an intention of revocation.
 

 It is contended on behalf of the Presbyterian Hospital that the withdrawal of the funds from the two banks was the voluntary act of Dr. Bacon, and was unauthorized by Mrs. McBurney, and that Dr. Bacon should be ordered to pay over to the executors the amount which he withdrew from said banks, and that said hospital be decreed entitled to the same as residuary legatee.
 

 We
 
 agree with the executors and with the finding of the learned trial judge that the money was withdrawn from the two banks on checks signed by Mrs. McBurney and that the proceeds of said checks were used to purchase the Canadian bonds and the New York exchange.
 

 It seems that Mrs. McBurney left New' Orleans for Canada on June 12, 1924, and was followed a few days later by Dr. Bacon. She was suffering at the time from a cancer of the bladder, which first manifested itself in October of the previous year. It was known for months before this trip to Canada that her death was imminent. On her way to Canada, she was so weak while at Chicago that she was unable to walk and had to be wheeled in a chair from one train to another. Her condition at that time was well known to Dr. Bacon.
 

 A physician had' to be called in when she reached Canada.
 

 She returned to New Orleans on July 12th, and as before stated died from this cancer on August 21st.
 

 It was on this trip and while in Canada that all of the money was withdrawn from the two banks in Canada.
 

 Shortly after reaching Canada, Mrs. Mc-Burney gave her two bank books to Dr. Bacon to have them written up by the banks. After this was done the books were returned to Mrs. McBurney, and she then requested
 
 *767
 
 Dr. Bacon to purchase $8Q,000 worth of Canadian bonds.
 

 The order was given to the bank by Dr. Bacon, and on June 25th the bank notified Dr. Bacon that they had the bonds. Mrs. Mc-Burney gave a check signed' in blank which Dr. Bacon carried to the bank. The bank filled out the check for the amount of the bonds, plus the brokerage charges, making said check payable to the Bank of Montreal or bearer. The bonds were delivered to Dr. Bacon, and he receipted to the bank for them.
 

 The bank’s records show that a receipt for the first bonds purchased was signed by Mrs. McBurney on June 25th, the day said bonds were purchased, and, further, that said bonds were held for account of Mrs. BcBurney. Without going further into detail of the evidence on the purchase of these bonds we are driven to the conclusion that Dr. Bacon in the purchase of the 1933 series of bonds Was acting for and on behalf of Mrs. Mc-Burney.
 

 On the same day Dr- Bacon rented a safety deposit box in a branch of the Bank of Montreal and placed the bonds therein. On July 2d these bonds were sold by the bank for account of Dr. Bacon, and a like number of bonds of 1934 of the par value of $80,000 were purchased by the bank for account of Dr. Bacon and were delivered to him against his personal receipt.
 

 There was a profit of-$1,040 realized on the transaction, and this amount was placed to the credit of Dr. Bacon,
 

 It is claimed by Dr. Bacon that.when he received the first bonds he placed them in a black bag and carried them to Mrs. Mc-Burney and that Mrs. McBurney counted the bonds, rolled them" up, put a rubber band around them, and said: “Doctor, I wish to give you these.”
 

 Dr. Bacon took the bonus, put them back in the bag, went to. another branch of the Bank of Montreal, rentéd a box in his own name, deposited the bonds therein, and returned home. Thereafter the bonds were sold and others purchased as already noted.
 

 In his reasons for judgment, the trial judge says:
 

 “To support his claim of acquisition for himself there is nothing but his bare word. The court must take as proof of the transfer of a fortune his statement that after he had delivered to her the bonds she returned them to him as a gift.
 

 “Without the circumstance that Mrs. McBurney is dead, that he was her confidential agent and adviser, that these bonds came into his hands as her agent and that he did not assert the gift before her death to any one with an adverse interest or speak of it to any one who was likely to be in communication with her, the burden would be on him to prove the gift which he claims. These circumstances gravely increase the burden. In such a case as is presented here all the authorities held, with one voice, that the proof must be clear and convincing.”
 

 We thoroughly agree in what the learned trial judge said.
 

 The good faith and honesty of Dr. Bacon may be accepted and all that he says may be true, and yet his testimony, standing alone, is not sufficient in law to justify the court in sustaining as a manual gift so large an amount as here involved.
 

 Article 2277, O. 0., declares that all agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed $500, which are not reduced to writing, may be proved uy any other competent evidence; such contracts or agreements above $500 in value must be proved at least by one credible witness and other corroborative circumstances.
 

 We think the rule thus laid down entirely applicable to such a case as here presented.
 

 There can be no difference in principle and in the sufficiency of parol proof required between a case where an ordinary claim is sought to be emorced against a succession
 
 *769
 
 exceeding $500 and a moneyed gift claimed to have been made in excess of that amount.
 

 In Cutler v. Collins, 37 La. Ann. 95, it was said:
 

 “The testimony of a plaintiff, in his own favor, to establish a large claim against a succession, should be received with the greatest caution. It is, in itself, of the weakest character and unless strongly corroborated, cannot serve as a basis for a judgment of recovery.”
 

 In the more recent case of Succession of Rageur, 155 La. 98, 98 So. 853, there was included in the inventory a note of one Blanche! for $7,840.
 

 Blanehet protested at the time and claimed that the note' did not form part of the succession, it having been remitted by the deceased before his death.
 

 Blanehet brought suit to have the note declared no paid: of the estate. The suit was contested by the universal legatee.'
 

 There was some evidence tending to corroborate that of Blanehet, but this court held that the testimony as a whole was not sufficient to establish such a large claim against the succession.
 

 If Dr. Bacon had brought suit against the succession of Mrs. MeBurney for $80,000, claiming that she owed him that dmount at her death and had relied solely on his own verbal testimony to prove such claim, would any court have been justified in giving him a judgment? Certainly not.
 

 Then how can this court or any other court decree that these bonds were given him gratuitously by Mrs. MeBurney in the absence of any testimony written or verbal corroborating that of Dr. Bacon?
 

 On July 10th, two days before Mrs. MeBurney left on her return trip to New Orleans, she signed a blank form of check on the Bank of Montreal and delivered it to Dr. Bacon.
 

 This cheek was filled out by the bank for $10,218.26, and was made payable to N. Y. Draft. The amount of this cheek was used by Dr. Bacon to purchase a New York exchange in his favor for $10,129.62, the cost of exchange being $88.64.
 

 This amount is likewise claimed by Dr. Bacon as a manual gift.
 

 What has been said as to the insufficiency of the evidence to sustain the manual gift of the bonds applies with equal force and effect to the manual gift of this check.
 

 But aside from the lack of sufficient proof there was no cheek delivered for this amount by Mrs. MeBurney to Dr. Bacon. The gift, if a gift at all, was of a blank piece of paper containing Mrs. MeBurney’s signature. She did not know then and never knew how much money she had left in the bank.
 

 The cheek was completed by the bank by inserting the amount and making the check payable, not to Dr. Bacon, but to “N. Y. Draft,” at the request of Dr. Bacon.
 

 In the case of Succession of Leroy, 157 La. 1078, 103 So. 328, we held that under article 1539, O. O., providing that “gift of corporeal movables is not subject to formality, indorsement and delivery of check payable to order of donor constitutes Valid donation of fund represented though collected after the death of donor.”
 

 But this court has never held that the giving of a blank form of cheek without a payee and without any amount being specified, but containing the mere signature of the supposed drawer, the naming of a payee and the amount to be inserted being left to the option and will of others, would constitute a legal donation or manual gift within the meaning of article 1539, Civil Code.
 

 The money to be drawn was in the savings department of the Bank of Montreal, and which could only be drawn by the surrendef of the book evidencing the deposit.
 

 In Succession of Housknecht, 135 La. 818, 66 So. 233, L. R. A. 1915B, 396, this court held that:
 

 ■ “The donation inter vivos of an account in a savings bank is the gift of a right or credit,
 
 *771
 
 which must be evidenced by an act passed before a notary public and two witnesses, under the pain of nullity.”
 

 Eor the foregoing reasons we think there was no valid manual gift of the sum of $10,-129.64.
 

 As to the other demands for certain checks, bonds, and certificates of stocks which were rejected by the court below, we find ourselves unable to make any change in the judgment. As we have already noted the heirs have acquiesced in the judgment by not appealing therefrom, nor have they joified in the appeal by an answer.
 

 The succession of Mrs. MeBurney is not insolvent. Hence executors are without interest or authority to champion the rights of the heirs.
 

 In Woodward v. Thomas, 38 La. Ann. 238, in considering the duties of administrators of successions, the court held that where the succession though solvent was largely in debt the administrator could sue for the revendication of real property without being joined by the heirs, referring to Civil Code, art. 1058, which requires the administrator to settle all the afrairs of the succession and, after payment of the debts, to turn the property over to the heirs.
 

 The court, through Mr. Justice Fenner, however, said:
 

 “This implies the right and duty to recover the property, as much as to collect the debts, * * * and ascertain the surplus. It is not for him, it is true, to assail the validity of act-s done by the decedent, unless necessary for the protection of creditors; and if he have already settled all the debts and charges of the succession, it is improper for him to institute new actions, because the objects of his agency have been fulfilled and he should give way to the heirs who are the only persons interested and may assert tlíéir own rights.”
 

 ■ We find no sufficient b'asis for altering the judgment appealed from. The said judgment is therefore affirmed.