ROGERS, Justice.
 

 William H. Byrnes, Jr., died at his domicile in the City of New Orleans on February 25, 1942. He was married twice. His first wife died many years ago leaving as issue of their marriage one son who, together with Mrs. Willie Pohlman Byrnes, his wife by second marriage, survive him.
 

 An inventory of the property of the succession was taken at the instance of decedent’s son who was applying to be appointed and who subsequently qualified as administrator. In the inventory certain homestead stock, mortgage notes and real estate were, at the request of the administrator, over and subject to the objection of Mrs. Byrnes, listed and valued as property belonging to the matrimonial community ■ resulting from decedent’s second marriage. Some months later, Mrs. Byrnes filed a rule directed against the administrator to eliminate from the inventory the property she contends is her separate and paraphernal property. The rule was tried and evidence taken and while the matter was under advisement, pending the filing of briefs on behalf of the parties, the administrator brought this suit for an injunction against Mrs. Byrnes and two homestead associations to prevent the disposition of the homestead stock and mortgage notes and for the recognition of the stock and notes as property of the second community.
 

 On the trial of the case it was agreed by counsel for the parties that the evidence taken on the trial of the rule filed by Mrs. Byrnes should be re-offered and considered by the trial judge in rendering his decision on the merits. The judge denied the application of the administrator for an injunction and decreed that the homestead stock and mortgage notes were the separate and paraphernal property of Mrs. Byrnes. The administrator has appealed.
 

 Two pieces of real estate in New Orleans and a small tract of land, containing ten lots of ground, in the Parish of Jefferson were listed and valued in the inventory of the succession. The property at the corner of Prytania and St. Andrew Streets, the home of the decedent, admittedly, was properly inventoried as his separate property and the property at the
 
 *1029
 
 corner of Prytania and Josephine Streets, in which the decedent owned an undivided one-half interest, admittedly, was properly inventoried as belonging to the community of the second marriage. Both pieces of property are encumbered with mortgages and paving liens. The property in Jefferson Parish was inventoried as property of the succession, subject to the claim of Mrs. Byrnes that it is her separate property.
 

 Under an olographic will and codicil dated respectively, October 5, and October 6, 1929, the decedent left to his wife the furniture and contents and the usufruct of the home at the corner of Prytania and St. Andrew Streets. Neither the real estate or usufruct thereof nor the household effects are embraced in plaintiff’s suit nor mentioned in the judgment herein under review. The controversy in which the parties are engaged before this Court involves only the homestead stock and the mortgage notes. As to these, the inventory lists fifty shares of stock in the Dryades Building and Loan Association in the name of Mrs. Byrnes, valued at $5,000, thirty-seven shares of stock in the Home Building and Loan Association in the name of Mrs. Byrnes, valued at $3,700, and two second mortgage notes, one for $6,000 and the other for $2,000 signed by Mrs. May B. Pohlman, the mother of Mrs. Byrnes.
 

 In addition to the olographic will and codicil, in which he left to his widow the usufruct of the home and the furniture and household effects therein contained, the decedent executed two other documents. One dated August 31, 1940 and the other dated March 4, 1941. These documents read as follows:
 

 “August 31st, 1940.
 

 Mrs. Wm. H. Byrnes, Jr.,
 

 1926 Prytania Street,
 

 City
 

 Dear Billy:
 

 The mortgage note which you obtained from your mother amounting to $6000.00 or any other sum, is your separate funds. You have always had your individual money under your own separate and individual control. It is not community property. I have no interest in it whatever. I have given you since our marriage, February 10th 1926, one hundred dollars a month for yourself. This money you have saved and it belongs to you. It was a gift and present from me.
 

 Wm. H. Byrnes, Jr.”
 

 “March 4th, 1941.
 

 The Homestead Stock in my wife’s name (Mrs. Wm. H. Byrnes, Jr.) is her own individual property. It is not community property. I have no claim whatever to it.
 

 Wm. H. Byrnes, Jr.”
 

 The above-mentioned documents appear to have been admitted to probate as wills of the decedent without any objection being made thereto by his son, either as the legal heir or as the administrator, who with evident sincerity testified that he did not desire to receive anything out of the. estate, his only interest being to see that the debts of the estate were paid.
 

 Mrs. Byrnes, who did not own any property at the time of her marriage with the decedent, claims that the homestead stock
 
 *1031
 
 and mortgage notes are her separate property as they represent investments which she made individually with money received as a gift from Mr. Byrnes.
 

 Mrs. Willie Pohlman Byrnes and the decedent were married on February 10, 1926. Mrs. Byrnes testified that from the inception of their marriage Mr. Byrnes, in. addition to providing for their household expenses, gave her $100 per month for her personal use and that from the money thus received, of which she had the separate administration, she accumulated sufficient funds to acquire the homestead stock and the mortgage notes now in her possession. Her testimony was not contradicted. But it is argued on behalf of the administrator that the testimony is improbable because all the investments of Mrs. Byrnes in homestead stock were made subsequent to March 4, 1941, ending January 2, 1942, and that the indebtedness for which she received the mortgage notes represented funds advanced to her mother on August 8, 1939, and on January 7, 1942. The record, however, shows, according to statements furnished by the secretaries of the Dryades Building and Loan Association and the Plome Building and Loan Association, that as far back as July 3, 1931, Mrs. Byrnes began investing in the stock of the former association with an initial investment of $1,000 and that as far back as October 11, 1937, Mrs. Byrnes began investing in the stock of the latter association. On April 12, 1937, the Home Building and Loan Association purchased 61% of the assets of the Industrial Homestead in 'liquidation and simultaneously issued to Mrs. W. T. Pohlman a certificate for $1,-200, and a pass book showing a credit of $20 representing 61% of stock valued at $2,000 held by Mrs. Pohlman in the Industrial Homestead Association. On October 11, 1937, the account was transferred from Mrs. Pohlman to Mrs. Byrnes, to whom the Home Building and Loan Association issued a certificate of stock for $1,200 and a pass book showing a credit of $20. From October 11, 1937, to and including August 21, 1940, when the account was apparently closed, a number of deposits and withdrawals were entered on the pass book. The account of paid-up stock in the association discloses the number of purchases and withdrawals of that class of stock from October 11, 1937, up to and including August 13, 1940. On the latter date Mrs.. Byrnes withdrew $2,000 of stock, apparently closing that account. On March 8, 1941, Mrs. Byrnes again opened an account in the Home Building and Loan Association for $3,200, which was represented by a certificate for that amount issued to her by the homestead association. Thereafter, beginning on July 1, 1941, and ending on January 2, 1942, Mrs. Byrnes on' four occasions purchased stock amounting in the aggregate to $500, so that at the date of the death of Mr. Byrnes, she owned $3,700 of paid-up stock in the Home Building and Loan Association.
 

 According to the affidavit of Mrs. Byrnes, which was admitted in evidence in lieu of her testimony in open court, the total amount of her subscription for stock in the Dryades Building and Loan Association from July 3, 1931, through July 1,
 
 *1033
 
 1938, amounted to $5,000. She stated in her affidavit that at the suggestion of Mr. Byrnes she withdrew the $5,000 from the association in the latter part of the year 1940 for the reason that he advised her he intended to add a codicil to his will of October 5, 1929, so that she would be ful-' ly protected not only as to the homestead stock but also for the money advanced to her mother; that for the same reason and at the same time she withdrew $3,100, which she had invested in the stock of the Home Building and Loan Association; that when her husband delivered to her the codicil to his will dated March 4, 1941, she immediately, to-wit: on March 7, 1941, took out certificate No. 19,053 for fifty shares or $5,000, in the Dryades Building and Loan Association, and on March 8, 1941, certificate No. 12,090 for thirty-two shares, or $3,200, in the Home Building and Loan Association; that the money she used in purchasing this stock was the money she had received as the result of her prior withdrawals from the homestead associations and which she had held intact under her separate administration and control; that she built up her investment in the Home Building and Loan Association from $3,200 to $3,700, as her account in that association now stands. Mrs. Byrnes further stated in her affidavit that the monies she advanced to her mother out of the donations made by Mr. Byrnes to her of $100 per month was over a period of years, as shown by the statement annexed to her affidavit, which statements are true and correct. The statement shows that there was due Mrs. Byrnes for advances made to her mother up to the year 1935, $3,428.63. Thereafter, from time to time, up to and including the year 1942, she made additional advances to her mother until the total reached the sum of $6,731.65. Practically all the items shown on the statement were for advances for taxes, repairs, paving charges and homestead payments. Mrs. Byrnes therefore declared that the sum of $8,000, representing the principal of the two mortgage notes held by her, one for $6,000 and the other for $2,000, was not actually due ; that $6,000 represented by a note for that amount, was due, and that the $2,000, represented by the other note, was intended to serve as a blanket mortgage to secure her for any additional advances she might make to her mother.
 

 Mrs. Byrnes finally declared in her affidavit that all the investments made by her. in the stock of the homestead associations, the mortgage notes acquired from her mother, and the property in Jefferson Parish were out of the $100 per month donated to her by her husband; that there was no commingling of funds of any kind or nature whatsoever, and that the $100 he gave her monthly was kept separate and apart by her for her own use and benefit.
 

 Mrs. Byrnes is not impeached. Her testimony is not contradicted and is corroborated by the records of the homestead associations with whom she dealt. It is also corroborated by the documents executed by Mr. Byrnes on August 31, 1940, and March 4, 1941, which we have herein-above quoted in full. In these documents Mr. Byrnes declared that since their marriage he presented his wife $100 per month
 
 *1035
 
 as a personal gift; .that she saved this money and it belonged to her; that the mortgage note for $6,000, which she obtained from her mother, and the homestead stock standing in her name were acquired by her with her separate funds which were always under her individual control; that the mortgage note and the homestead stock were not community property, but were the individual property of Mrs. Byrnes, and that he had no claim whatever to the property. The good faith of Mr. Byrnes in making these statements is not questioned.
 

 The positive testimony given by Mrs. Byrnes, which is corroborated by the other evidence to which we have referred, can not be overcome by suspicion founded on the mere improbability of her statements.
 

 It is contended on behalf of the administrator that the testimony of Mrs. Byrnes and the documents relied on by her do not establish a gift as contemplated by the law. But no authority is cited in support of the contention. The money given Mrs. Byrnes by her deceased husband as a personal present became her individual property under the provisions of the Civil Code and the decisions of this Court based thereon and, hence, the mortgage notes and homestead stock which she acquired with the money also became her individual property-
 

 The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality. Civ. Code, Art. 1539. Money may be validly donated by manual gift. Succession of Zacharie, 119 La. 150, 43 So. 988; Gibson v. Hearn, 164 La. 65, 113 So. 766; Guss v. Mathews, 179 La. 1033, 155 So. 765. A man may give to his wife or a woman to her husband, either by marriage contract or during marriage, all that he or she might give to a stranger. Civ. Code, Art. 1746. And a man or woman who contracts a second or subsequent marriage, having a child or children by a former marriage, can give to his wife or she to her husband, either by donation inter vivos or by last will and testament in full property or usufruct, all that portion of his estate, or her estate, as the case may be, that he or she can legally give to a stranger. Civ. Code, Art. 1752. A donation of community property made by the husband to the wife is valid, because the wife alone has the right to complain of a violation of Article 2404 of the Civil Code, which forbids the husband to make a donation of community property, and when she consents the donation is valid. Succession of Williams, 171 La. 151, 129 So. 801.
 

 Mrs. Byrnes had the possession and individual administration of the money which she received from her husband as a manual gift, and on his advice or the advice of some other person or on her own initiative, she made her own investments in the homestead stock and mortgage notes now in her possession.
 

 All the facts of the case bring it within the provisions of the code articles referred to and the rules announced in the authorities cited. We are, therefore, of the opinion that • the trial judge was correct in holding that the homestead stock and mortgage notes involved in this case be
 
 *1037
 
 long to Mrs. Willie Pohlman Byrnes individually and not to the succession of her deceased husband.
 

 For the reasons assigned, the judgment appealed from is affirmed.