HAWTHORNE, Justice.
 

 Plaintiffs, Mrs. Bessie Patout Faison and Mrs. Annie Patout Pole, instituted this suit to be recognized as the owners of certain items of jewelry by virtue of an alleged manual gift from their mother, Mrs. Clelie Romero, widow of Hypolite Patout, both deceased. During the proceedings in the lower court, one of the plaintiffs, Mrs. Annie Patout Pole, died, and her succession, through the testamentary executrix, was made a party in this suit.
 

 The defendants are grandchildren of Mrs. Clelie Romero Patout and Hypolite Patout, being children of their three deceased sons, Ory, Oswald, and Sebastian Patout. These defendants deny that plaintiffs received this jewelry by manual gift and are the owners thereof, and they claim an interest therein by virtue of inheritance.
 

 The lower court rendered judgment recognizing plaintiffs to be the owners of the jewelry, and from this judgment defendants have appealed.
 

 Plaintiffs, having asserted ownership of the jewelry by virtue of a manual gift from their deceased mother, have the burden of establishing such ownership by a preponderance of the evidence. The trial judge, after considering all the testimony concluded, as pointed out in his sound and well written reasons for judgment, that these plaintiffs had proved to his entire satisfaction their ownership of the jewelry by virtue of a manual gift from their mother.
 

 The trial judge in his reasons for judgment found substantially the following facts, and, from a reading of the record, we fully agree in his findings:
 

 Mrs. Hypolite Patout, mother of these plaintiffs, died on February 26, 1931. During her last illness in November or December of 1930, she requested her son Oswald to go to the First National Bank in Jeanerette, Louisiana, and secure from a safety deposit box therein her jewelry box. Her son complied with her request. When he handed the box to his mother, who was confined to her bed, she at that time, in the presence of her daughter, Mrs. Faison; her sister, Mrs. S. O. Nuckolls, and her son, Oswald, opened the box and took a lavaliere therefrom. She handed this to Mrs. Faison, who clasped it around her neck. It was during this time that Mrs. Patout said that she gave to her two daughters, Bessie Patout Faison and Annie Pat-out Pole, the jewelry in question, her language being “My jewelry I give to my two daughters.”
 

 After the lavaliere was replaced,, the box which contained the jewelry here in controversy was handed by Mrs. Patout to Mrs. Faison, who took it into her custody
 
 *22
 
 and into her charge, and immediately thereafter placed it in a chifforobe in her mother’s room in which she (Mrs. Faison) had some personal belongings. Mrs. Faison, a resident of Dallas, Texas, was in the home because of her mother’s illness and was sleeping in her mother’s room with her.
 

 Mrs. Annie Patout Pole, who was residing with her mother, was at home at the time the gift was made, although not in the room. When she returned to the room, she was informed by Mrs. Faison in their mother’s presence that their mother had made a gift to them of the jewelry. Mrs. Pole thereupon went to the chifforobe, examined the jewelry, and returned the box containing the jewelry to the chifforobe.
 

 Mrs. Patout died a few months later. 'Soon after her death Mrs. Pole removed the jewelry from the chifforobe into her own bedroom.
 

 A month or so thereafter, Sebastian Patout, one of Mrs. Patout’s sons, called at the family home where Mrs. Pole was residing, and suggested to his sister that she remove the jewelry from her bedroom, which was an unsafe place in which to keep it, and that he would deposit it in his bank box for safekeeping. Mrs. Pole agreed to this suggestion, and in due course the jew•elry box was wrapped in heavy paper, with the name “Mrs. Annie Patout Pole” written twice thereon, and placed by her brother .Sebastian in his bank box in the First National Bank of Jeanerette. There it remained until his death in June, 1942.
 

 Shortly after his death, his widow, Mrs. Myrtle Junca Patout, without the knowledge or consent of these plaintiffs, removed the jewelry box from her husband’s safety deposit box and placed it in another deposit box in the same bank which she took out in the name of “Heirs of Mj. and Mrs. H. Patout.”
 

 During the trial, under orders of court a bank official produced the container from this safety deposit box. This container was opened by the court, and a package wrapped in heavy paper, with the name “Mrs. Annie Patout Pole” written twice thereon, was taken out and opened, the jewelry box was taken therefrom, and the jewelry was removed and identified.
 

 On or about June 24 or 26, shortly after Sebastian Patout’s death, these plaintiffs were accompanied to the home of Mrs. Nuckolls, their aunt, by Mrs. Sebastian Patout after attending a religious service which was designated as “Father Schwing’s first mass.” On this occasion plaintiffs requested Mrs. Sebastian Patout to deliver to them the jewelry which her husband had placed in his safety deposit box in their behalf for safekeeping. Mrs. Sebastian Patout refused, and informed plaintiffs that their only recourse was in the courts. Six months later, on December 19, 1942, plaintiffs instituted this suit
 

 
 *23
 
 The facts set out above, in our opinion, bring this case squarely under the provisions of Article 1539 of the Revised Civil Code. These items of jewelry are corporeal, movable effects and were given to plaintiffs by their mother, her words being “My jewelry I give to my two daughters.” These words were accompanied by an actual or real delivery, and at that time the ownership "Vested in these plaintiffs. Guss v. Mathews, 179 La. 1033, 155 So. 765; Succession of Byrnes, 206 La. 1026, 20 So.2d 301. After this manual gift, Mrs. Patout never at any time had custody or control of these jewels. From the date of the gift until June, 1942, they were in the custody and under the control of plaintiffs individually or through their designated agent or depository, their brother, Sebastian Patout.
 

 The manual gift to these plaintiffs was made in November or December, 1930, and this suit was filed on December 19, 1942. Defendants pleaded the prescription liberandi causa under Article 3544 of the Revised Civil Code, contending that this was a personal action and under the provisions of this article was prescribed by 10 years, more than 10 years having elapsed between the time the property left the possession of the plaintiffs in March, 1931 (when the jewelry was delivered to Sebastian Patout for safekeeping), and the time the suit was filed.
 

 There might be some merit in a plea of prescription if Sebastian Patout had possessed the property for himself and the other heirs and adversely to these plaintiffs, but the record convinces us that he was acting as depository for his two sisters, these plaintiffs, and that his possession of the property was for their benefit — for them, and not in his own name or right.
 

 Counsel for defendants is in error in his. contention that the 10-year prescription under Article 3544 commenced to run in-March, 1931. Prescription began to run-when plaintiffs were first denied delivery of this jewelry in June, 1942, after the death of their brother Sebastion Patout, and this suit was filed in December, 1942, about six months later.
 

 For the reasons assigned, the judgment appealed from is affirmed; defendants-appellants to pay all costs.