121 So.2d 8 (1960)
Lizzie Knight ODOM, Plaintiff-Appellant,
v.
James ODOM et al., Defendants-Appellees.
No. 9150.
Court of Appeal of Louisiana, Second Circuit.
May 23, 1960.
*9 Peterman & Burden, Alexandria, for appellant.
Polk, Foote & Neblett, Alexandria, for appellees.
GLADNEY, Judge.
This suit was instituted by Lizzie Knight Odom, surviving widow in community of the late Peter S. Odom, against Grover Davis, Amelia Odom Owens, Jane P. Odom Mitchell and James Odom, children of a former marriage of the deceased. Plaintiff's petition seeks to annul a judgment rendered in the succession of Peter S. Odom, which decree recognized the defendants as heirs of the decedent and placed them in possession of certain property. Further relief requested was the appointment of an administrator for her late husband's estate. Following adjudication by the district court, plaintiff's claims for relief for the most part were determined to the satisfaction of all parties or abandoned to the end that at the time this appeal was lodged the only serious controversy remaining concerned the ownership of a bank deposit of $1,218 in the Rapides Bank and Trust Company, standing in the name of plaintiff. The trial court resolved this particular issue by recognizing plaintiff to be entitled to $68 and the defendants to $1,150 of the account. Plaintiff has appealed from the decision.
Peter S. Odom was first married to Mary Jane Martin, who died prior to 1946. Later, on September 24, 1947, Odom was married to the plaintiff in this suit. The named defendants are the children of the first marriage. At the time of his second marriage, Peter S. Odom was seventy-two years of age and during the last eighteen months of his life he was afflicted with an incurable disease which confined him to his home and from which he died December 2, 1956.
Prior to the formation of the community of acquets and gains between plaintiff and Peter S. Odom, the latter had two bank accounts, one of which was in the Guaranty Bank & Trust Company of Alexandria, together with certain other property, both real and movable. Plaintiff's separate property on September 24, 1947 consisted of a home in which she and the deceased lived, a few cattle, and something over $1,000 in cash, which was held for her order by her son, Roscoe Knight. She testified this money was used to pay some of the debts of the community.
Upon the case being first submitted to the district court, judgment was rendered decreeing plaintiff to be the owner of an undivided one-half interest in two bank accounts in the Rapides Bank & Trust Company, and a Ford truck. Defendants filed a motion for rehearing, wherein they averred receipt of additional evidence especially affecting the status of the balance of $2,036.85 which was on deposit at the Guaranty Bank & Trust Company of Alexandria in the name of Mr. Odom, and which bank account was closed on October 23, 1956, upon Mrs. Odom cashing a check for said amount, signed by her husband. Defendants assert the $1,000 deposited by Mrs. Odom on October 23, 1956, in her name in the account in the Rapides Bank & Trust Company was the separate property of the deceased and did not constitute a repayment of Mrs. Odom's separate funds as claimed. Upon consideration of the additional evidence presented the judge a quo ruled the $2,036.85 withdrawn from the account in the Guaranty Bank & Trust Company was identified as the separate funds of Odom.
In tracing the origin of the $2,036.85 withdrawn on October 23, 1956, the evidence disclosed that on March 7, 1949, there was a balance of $473.01, an undetermined part of which unquestionably was derived from community funds. Subsequently, the following deposits were made: $4,020.23 on March 7, 1949, $200 on March 9, 1949, *10 and $2,000 on May 17, 1955. Of the $4,020.23 only $20.23 was not identified as paraphernal funds and undeniably the deposit of May 17, 1955, was the separate property of Odom. It is clear, therefore, that of the deposits made in the account since March 7, 1949, only $220.23 of a total of $6,220.23 were not proven to be the separate and paraphernal property of Odom. Of the $2,036.85 remaining on October 23, 1956, after withdrawals it is necessarily true that only a very small interest therein could possibly belong to the community. The amount which might be subject to a claim as community property is not sufficient to justify a finding of commingling of such a nature as to stamp the checking account as being community property. We, therefore, approve of the ruling of the judge a quo that the $1,000.00 which was deposited by plaintiff in the Rapides Bank & Trust Company originally was paraphernal property of her husband.
The law contemplates that when separate funds are mixed with community funds, they only become a part of the community when such separate funds are no longer capable of identification. When only a relatively small amount of the deposit is community it will be considered inconsequential and insufficient to constitute commingling and does not warrant the designation of the checking account as community property. Succession of Land, 1947, 212 La. 103, 31 So.2d 609; Abunza v. Olivier, 1956, 230 La. 445, 88 So.2d 815.
In support of appellant's contention the funds in the checking account in the Guaranty Bank & Trust Company were commingled, counsel cite Bruyninckx v. Woodward, et al., 1950, 217 La. 736, 47 So.2d 478. The decision is inapposite for the issue therein was resolved in favor of the community for the reason the bank ledger disclosed that throughout the existence of the community numerous substantial deposits of funds belonging to the community had been indiscriminately placed in the account with the result it was impossible to determine what part of the balance remaining could be attributed to the separate estate. Of course, in the instant case the facts are different from those presented in Bruyninckx v. Woodward, and our ruling must follow Succession of Land and Abunza v. Olivier, cited above.
With this background, we turn to a consideration of the ownership of the remaining $1,218 deposited in the name of Mrs. Odom, as of the time this suit was instituted. The district court made the following analysis of the account:
"It had been opened with a deposit of $300 on August 20, 1956, followed by another in the same amount four days later. The $1,000.00 deposit followed on October 23, 1956. Mrs. Odom claims that the initial deposit was of money given to her by Mr. Odom, and there is evidence corroborative of this claim in the record. The second deposit is claimed by her to represent the proceeds from the sale of her cattle. It has already been said that the evidence falls short of establishing that these cattle were her separate property. Accordingly, we have the situation of plaintiff's account being made up of $300 of her separate property, $300 of community funds and $1,000 of Mr. Odom's separate property. After withdrawals, this account at the time of Mr. Odom's death had a balance of $1,474, which means that $126 had been withdrawn. Two days after Mr. Odom's death $139.29 was deposited to this account, and in a short time thereafter withdrawals were made, reducing the account to its present balance of $1,218.
"The aforementioned commingling of funds has not made it impossible to segregate them. At the time of Mr. Odom's death $126 had been withdrawn from the original total of $1,600. Mrs. Odom owned $300 of this money, and it seems proper to regard the withdrawal of $126 as having come from her separate *11 funds. In this view she at the time of her husband's death, owned the balance of $174 and one-half of the $300 belonging to the community, for a total of $324. The remainder of the account, or $1,150 was the property of Mr. Odom's estate."
Plaintiff claims the entire account of $1,218 is her separate property. We do not understand the $300 deposit made on August 24, 1956, which was held by the trial court to be community property, is seriously contested. This item which plaintiff said was derived from the proceeds of her cattle is largely foreclosed by unsatisfactory evidence which fails to show such cattle sold were not of "the increase" which under LSA-C.C. Arts. 593, 2407 and 2408, falls into the community. It is urged that plaintiff received the $1,000 in reimbursement of separate funds which she had advanced to pay community debts, and, alternatively, if the foregoing position be not recognized, then the sum was hers as a manual gift. Proof of plaintiff's claim that her husband gave her this sum as reimbursement of a community debt to her separate estate must be tested by LSA-C.C. Art. 2277, which reads:
"All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances."
The record is bare of corroborative testimony or other evidence and must be questioned for there is no satisfactory explanation as to the disposition of the remainder of the $2,036.85 check of her husband.
In Funderburk v. Funderburk, 1949, 214 La. 717, 38 So.2d 502, 506, a resume of the law apropos to this issue is set forth thus:
"Under the Revised Civil Code, a husband can give his wife, when he has children by a former marriage, only that portion of his estate that he could give to a stranger (Article 1752; Succession of Byrnes, 206 La. 1026, 20 So.2d 301), and when such donation is in the form of a manual gift of corporeal movable effects, accompanied by a real delivery, it is not subject to any other formality. Article 1539; Succession of Hale, 26 La.Ann. 195; Succession of Zacharie, 119 La. 150, 43 So. 988; Succession of Housknecht, 135 La. 818, 66 So. 233, L.R.A.1915B, 396; Hurley v. Hurley, 146 La. 337, 83 So. 643; Succession of McBurney, 162 La. 758, 111 So. 86; Gibson v. Hearn, 164 La. 65, 113 So. 766; Faison v. Patout, 212 La. 37, 31 So.2d 416. The burden of proof, however, rests upon the one claiming the donation. Succession of Zacharie, supra; Succession of Housknecht, supra; Succession of Rageur, 155 La. 97, 98 So. 853; Succession of McBurney, supra; and Faison v. Patout, supra. See, also, Articles 2277 and 2288 of the Revised Civil Code.
"An analysis of the cases cited above in connection with Articles 1539 and 1752 of the Revised Civil Code will show that the proof required in such cases must be strong and convincing that it was the donor's intention to give the property."
The trial court determined the proof tendered in support of plaintiff's claims is unsatisfactory and we agree with this holding. Nor can we see how plaintiff can claim the amount as a manual gift on the one hand and as repayment of a debt on the other. The evidence offered does not substantiate the claim for we are unable to ascertain with any reasonable degree of certainty that any part of the check on the Guaranty Bank & Trust Company was intended by Odom as a manual gift to his wife. It seems more probable the withdrawal was prompted by a desire to facilitate *12 the handling of his money because of his inability to go to the bank for the purpose of more readily paying his debts. Our consideration of the record does not reveal manifest error in the rulings of the trial judge of which appellant complains.
The appellees after filing a motion to dismiss the appeal under C.P. Article 567 on the ground plaintiff has acquiesced in the judgment appealed from, have further petitioned this court praying for alternative relief "if the court does not dismiss this appeal on the basis of facts as disclosed by the record in its present form", asserting that "the matter should be returned to the lower court for proper resolution of the facts in controversy." In case of remand respondents would have the court resolve the correctness of the averments of paragraph 5 of the plaintiff's petition, which are:
"That during the latter part of 1956, defendants petitioned this Court in Probate Matter No. 8818 to be recognized as the sole and only heirs of Peter S. Odom and as such recognized and placed in possession of his property; that in said petition and supporting affidavit, said defendants knowingly, fraudulently and falsely represented to this Honorable Court that the said Peter S. Odom left real, personal and mixed property, all of which belonged to the community existing between the said Peter S. Odom and his first wife, Mary Jane Martin, or belonged to the separate estate of the said Peter S. Odom, and did further represent to the Court that the Estate of Peter S. Odom was free from debt when in truth and in fact it was not."
The motion to dismiss the appeal has been traversed and we find there has not been an unconditional, voluntary and absolute acquiescence in the judgment on the part of the appellant as to justify dismissal. Scott v. Scott, 1950, 218 La. 211, 48 So.2d 899; Rex-Metallic Casket Company v. Gregory, La.App.1958, 104 So.2d 185; C.P. Art. 567.
The alternative relief by remand sought by appellees is not clearly explained. This cause has received two hearings in the trial court and the merits of all issues raised in the pleadings have been adjudicated. Prior to the filing of the plea for remand counsel for both sides were in accord that the only question to be resolved was the status of one bank account, which we think has been correctly adjudicated. We fail to see that anything would be granted by a remand, and we deny the plea.
The judgment is affirmed at appellant's cost.