306 So.2d 399 (1975)
Succession of Eldest J. BROUSSARD.
No. 4820.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1975.
*401 Ronald J. Gossen, Lafayette, for plaintiff-appellant.
J. Minos Simon and John Rixie Mouton, Lafayette, for defendant-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
MILLER, Judge.
Plaintiff, Alberta Broussard, daughter of decedent Eldest J. Broussard by his first wife, appeals the judgment classifying four savings accounts, one checking account, and one parcel of land as separate property of decedent's second wife Rena Clement Broussard, the defendant in this action. Defendant answers the appeal seeking reclassification of another parcel of immovable property as her separate property. We affirm in part and reverse in part to hold most of the disputed property belonged to the community of acquets and gains existing between defendant and decedent.
Eldest J. Broussard died on November 29, 1962. Of his first marriage three children were bornAlberta Broussard (plaintiff), Geraldine Broussard, and Darrell Broussard. Decedent married his second wife, Rena Clement (defendant) on January 22, 1945, and two children were born of this marriage.
The trial court ordered inventories taken of the property belonging to decedent at the time of his death.
Motions to traverse the classification as separate or community property raise the following issues:
1) Did Broussard make a manual gift to his second wife, Rena C. Broussard of all profits earned by his wife's beauty shop?
2) Are the following properties to be classified as the widow's separate property or were they community?
A. Checking account in Rayne State Bank & Trust Company in the name of Rena's Beauty Shop in the amount of $207.59.
B. Four savings accounts. Two at New Iberia Savings & Loan Association in the sums of $5,351.00 each, and two at Gulf Coast State Bank, Winnie, Texas, in the sums of $308.00 each.
C. Lots 1 and 3 of Block "H" of the St. Charles College Addition to the City of Rayne.

*402 D. Lot 15 of Block 11, Cunningham Addition to the City of Rayne.
E. Improvements made to decedent's separate property known as Lots 1, 3, and 5 of Block "I" of the St. Charles Addition to the City of Rayne.
3) Was the trial court manifestly wrong in approving the $500 appraisal of the community's household furnishings?

The alleged donation to wife of her earnings from her beauty shop
In 1956, defendant opened her beauty shop. She testified that she borrowed $500 from a Savings & Loan to open the business and repaid that loan with her business earnings. She opened a checking account in the name of the beauty shop subject to withdrawal solely upon her signature. She paid all utility bills associated with operations of the beauty shop.
The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, ... are her separate property. (Emphasis added.) LSA-C.C. art. 2334.
Notwithstanding the italicized portion of the code article, the earnings of the wife while living with her husband under the regime of community property, are community property even though the earnings come from business conducted, or an occupation pursued by the wife separately from her husband. Haughton v. Hall, 177 La. 237, 148 So. 37 (1933). See also Succession of Howell, 177 La. 276, 148 So. 48 (1933).
Since defendant was living with decedent while operating the beauty shop, her earnings from the beauty shop fell into the community of acquets and gains.
The manual gift, that is, the giving of corporeal movable effects, accompanied by real delivery, is not subject to any formality. LSA-C.C. art. 1539. Defendant, relying on Succession of Byrnes, infra, and LeBlanc v. LeBlanc, 80 So.2d 715 (La.App. 1 Cir. 1955), contends that "future earnings" are corporeal movables and can therefore be the subject of a manual gift. LSA-C.C. art. 1539. We do not understand these cases to support that argument. Corporeal things are such as are made manifest to the senses, which we may touch or take, which have a body, whether animate or inanimate. Of this kind are fruits, corn, gold, silver, clothes, furniture, lands, meadows, woods, and houses. LSA-C.C. art. 460. We hold that future earnings are incorporeal things, such as are not manifest to the senses and which are conceived only by the understanding; such as the rights of inheritance, servitudes and obligations. LSA-C. C. art. 460.
Defendant alternatively contends that her husband manually donated to her all profits from the beauty shop; that each deposit of her earnings to her separate account constituted a manual gift.
During the marriage the husband may donate to his wife in full ownership all that he might give to a stranger. LSA-C.C. art. 1746. A man who contracts a second or subsequent marriage can give to his wife, either by donation inter vivos or by last will and testament, in full ownership or usufruct, all that portion of his estate that he could legally give to a stranger. LSA-C.C. art. 1752. A donation of community property made by the husband to his wife is valid, because the wife alone has the right to complain of a violation of LSA-C.C. art. 2404, which prohibits the husband from donating community property. The donation is valid when she consents. Succession of Williams, 171 La. 151, 129 So. 801 (1930); Succession of Byrnes, 206 La. 1026, 20 So.2d 301 (1944).
In order to complete a manual gift, it suffices that 1) the donor's will to give, and 2) actual possession of the corporeal *403 movable property by donee, operate simultaneously. Succession of Gorman, 209 La. 1092, 26 So.2d 150 (1946).
Defendant had actual possession of her earnings and profits from her beauty shop because these earnings and profits were deposited in a checking account and in various savings accounts subject to withdrawal solely on her signature.
The rub comes when one seeks to determine decedent's intent to donate these earnings to his wife. If he did hold this intent, did this intention to donate operate simultaneously with defendant's actual possession of these funds?
Donee bears the burden of proving the alleged donations. Succession of Rageur, 155 La. 97, 98 So. 853 (1924); Succession of McBurney, 162 La. 758, 111 So. 86 (1927); Faison v. Patout, 212 La. 37, 31 So.2d 416 (1947). The proof must be strong and convincing that donor intended to give the property. Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502 (1949); Succession of Oulliber v. Ouilliber, 204 So.2d 625 (La.App. 4 Cir. 1967); Succession of Brewster, 259 So.2d 388 (La.App. 2 Cir. 1972).
The only evidence presented at trial concerning decedent's intention was given by his widow the defendant. She testified that her husband told her when she opened the beauty shop, that as long as she paid the utilities, whatever she made was to belong to her.
There is no testimony concerning decedent's intentions after the beauty shop was opened. Succession of Gorman, supra, requires the intent to donate to be simultaneous with actual possession by the donee. There was no testimony in this record to show that decedent continued this alleged donative intent.
A litigant's testimony in her own favor to establish a large claim against a succession is received with great caution. It is, in itself, of the weakest character, and, unless strongly corroborated, cannot serve as a basis for judgment. Cutler v. Succession of Collins, 37 La.Ann. 95 (1885); Caldwell v. Turner, 129 La. 19, 55 So. 695 (1911); Succession of McBurney, 162 La. 758, 111 So. 86 (1927); Willis v. Gordon, 143 So.2d 798 (La.App. 1 Cir. 1962); Succession of Oulliber v. Oulliber, 204 So.2d 625 (La.App. 4 Cir. 1967). Under LSA-C.C. art. 2282, her credibility is diminished because she is a party.
As corroborating evidence (concerning decedent's donative intent), the widow offered records of two Savings & Loan associations, and records of the checking account in the name of the beauty shop. This evidences actual possession, but not donative intent. It is not the strong corroboration required by Cutler v. Succession of Collins, supra; Caldwell v. Turner, supra; Succession of McBurney, supra; Willis v. Gordon, supra, and Succession of Oulliber v. Oulliber, supra.
Succession of Byrnes, 206 La. 1026, 20 So.2d 301 (1944), is distinguished. In that case the wife's testimony was corroborated by a document signed by her husband confirming the donation.
We do not question defendant's integrity. We simply note that defendant failed to support her testimony with clear and convincing evidence to show decedent's donative intent.
We find manifest error in the trial court's determination that her business earnings and profits were her separate property. The wife's business earnings and profits were community property.

Checking account of beauty shop
Defendant testified that Rena's Beauty Shop checking account of $207.59 consisted exclusively of her beauty shop earnings. Since these earnings have been found to be community property and the widow failed to establish a donation, we reverse and set aside the trial court's finding that this checking account was the widow's separate *404 property. The checking account is community property.

Four savings accounts
Defendant testified that these accounts which totalled $11,318.00 consisted of her business earnings and other manual gifts from decedent and from her mother. For reasons previously assigned, the business earnings fell into the community of acquets and gains.
Defendant testified that she received other gifts from decedent which were deposited in these accounts. These gifts were the proceeds from crops grown on community property, from the sale of a horse, from the winnings from horse races, and from defendant's share of profits from his business of selling automobiles.
Defendant's testimony is the sole support for these contentions. For reasons previously assigned, her testimony standing alone is not sufficient to prove the alleged donations. Defendant has failed to bear the burden of proving by strong and convincing evidence that decedent intended to donate these sums to her.
Plaintiff testified that she received several gifts of money from her mother during the marriage. She identified only one, a $135.25 deposit made on July 17, 1961, as proceeds from an oil lease granted by her mother. But defendant has not alleged nor presented evidence to show that these alleged gifts were made to her particularly. This does not meet the LSA-C.C. art. 2334 test to establish separate property:
Separate property is that which either party ... acquires during the marriage... by donation made to him or her particularly. (Emphasis added.)
To overcome the strong presumption that property acquired during the marriage is community property, the proof must be strict, clear, positive, and legally certain. Prince v. Hopson, 230 La. 575, 89 So.2d 128 (1956); Succession of Smith, 247 La. 921, 175 So.2d 269 (1965); LSA-C.C. arts. 2334, 2402, and 2405.
The evidence here is not clear or positive, and it is not legally certain that these gifts from defendant's mother were made to defendant particularly. Therefore, defendant has not overcome the presumption that these gifts were community property. Furthermore, she has not identified the amounts of most of the alleged gifts.
Finding manifest error in the trial court's determination that these four savings accounts were defendant's separate property, we hold these accounts to belong to the community.
Defendant claims that several gifts of oil lease money have been received from her mother after decedent's death. Since the community was dissolved as of the date decedent died, nothing received after that time fell into the community. There is nothing to indicate that the interests discussed thus far were received after decedent's death.

Lots 1 and 3 of Block "H" of St. Charles Addition to the City of Rayne
On February 11, 1945, less than a month after defendant's marriage to decedent, she purchased these lots in her own name. Although the deed is not in evidence, it appears that the parties concede that the deed contained a declaration that the property was purchased with her separate paraphernal funds under her separate administration and for her separate estate.
The presumption that the property is community property is not overcome by the declaration of the spouses in a deed to the wife. Houghton v. Hall, 117 La. 237, 148 So. 37 (1933).
To overcome the presumption in favor of community property, the wife *405 must establish: 1) the paraphernality of the funds; 2) the administration thereof separately and apart from her husband; and 3) the investment by her of these funds. Houghton v. Hall, supra.
Defendant could not testify as to the source of the funds used to purchase these lots. She failed to sustain the heavy burden of proof and has not overcome the presumption in favor of community property.
The trial court correctly held these two lots to be community property.

Lot 15 of Block 11, Cunningham Addition to the City of Rayne
In 1960, defendant purchased this lot in her own name. Although the deed is not in evidence, it appears that the parties concede that the deed contained the wife's declaration that the property was her separate and paraphernal property.
When plaintiff's counsel attempted to inquire into the nature of the funds used to purchase this property, defendant's counsel objected on the grounds that the acknowledgment was in authentic form and could not be questioned absent an allegation of fraud. The objection was sustained.
Plaintiff was a child of decedent and a forced heir. Although decedent would have been estopped from denying that property purchased during his marriage belonged to his wife (because title was in her name and he had acknowledged in an authentic act that it was purchased with her paraphernal funds), his forced heirs are relieved from this estoppel by the provisions of LSA-C.C. art. 2239. Westmore v. Harz, 111 La. 305, 35 So. 578 (1902); Succession of Milton, 278 So.2d 159 (La.App. 1 Cir. 1973). Therefore the trial court improperly excluded this testimony.
However, defendant's counsel introduced into evidence the checks by which defendant purchased this property, and established that the funds used to purchase the property were derived from the beauty shop. Having previously determined that these earnings are community property, we find that plaintiff carried the burden of proving that this property was purchased with community funds. The property is therefore owned by the community.
Defendant contends that the manual gift as to this parcel of land was corroborated when her husband declared that she was purchasing property with her separate funds. This reasoning has been effectively rejected by the line of cases holding that it takes strong evidence to prove the wife purchased property with her separate funds. Houghton v. Hall, 177 La. 237, 148 So. 37 (1933). This argument can only apply to the purchased property, and not to her earnings in general.

Improvements made to husband's separate property
Lots 1, 3, and 5, of Block "I" of the St. Charles Addition to the City of Rayne were purchased by decedent prior to his marriage to defendant. The ownership of these three lots is not questioned. At issue here is the showing in the inventory that the improvements erected during the community were the separate property of decedent without showing a debt to the community.
The trial court correctly found these improvements belonged to decedent's separate estate, but that defendant was entitled to an award of one-half the value of the property which was added by the improvements. LSA-C.C. art. 2408. The trial court properly ordered a reappraisement of the property to determine to what extent these improvements enhanced the value of the three lots, and that such enhanced value be carried on the inventory as community property.

*406 Value of household furnishings

Plaintiff alleged that the household furnishings had a value of $4,000 as opposed to the $500 shown on the inventory. No evidence was introduced to establish actual value of these furnishings. Plaintiff failed to establish error in the $500 value set by the trial court.
We affirm the trial court judgment 1) classifying Lots 1 and 3 of Block "H" of the St. Charles Addition to the City of Rayne as community property, 2) valuing the household furnishings at $500, and 3) recognizing the community's claim against decedent's separate estate for the enhanced value resulting from the improvements made to Lots 1, 3, and 5 of Block "I" of the St. Charles Addition to the City of Rayne.
The balance of the judgment is reversed and set aside. It is hereby ordered, adjudged, and decreed that plaintiff have judgment against defendant classifying the following properties as belonging to the community of acquets and gains which existed between Eldest J. Broussard and Mrs. Rena C. Broussard:
1) The checking account in the sum of $207.59, in the name of Rena's Beauty Shop located in Rayne State Bank and Trust Company.
2) Two savings accounts in the sums of $5,351.00 each, located at New Iberia Savings and Loan Association, New Iberia, Louisiana.
3) Two savings accounts in the sums of $308.00 each, located at Gulf Coast State Bank in Winnie, Texas.
4) Lot 15 of Block 11 of the Cunningham Addition to the City of Rayne.
All costs both at trial and on appeal are assessed one-half to plaintiff and one-half to defendant.
Affirmed in part; in part, reversed and rendered.