116 So.2d 84 (1959)
Succession of Dr. William L. BENDEL, Deceased.
No. 9033.
Court of Appeal of Louisiana, Second Circuit.
November 25, 1959.
*85 Oliver, Digby & Fudickar, Monroe, for appellant.
George Spencer, Monroe, for appellee.
AYRES, Judge.
This is a contest between the surviving widow and son, as the only heirs of Dr. William L. Bendel, deceased, on the one hand, and the Inheritance Tax Collector, on the other, as to the computation of the inheritance taxes due by them to the State of Louisiana as heirs or legatees of the decedent. The question involved is the applicability of the statute (LSA-R.S. 47:2401 et seq.) to certain United States Savings Bonds of the value of $56,993.40 at the time of his death, purchased by the decedent in the name of, and made payable to, his wife.
On trial in the court below, the aforesaid bonds were found to constitute an asset of the community of acquets and gains formerly existing between Doctor Bendel and his surviving widow. Accordingly, in fixing the inheritance taxes, the one-half community interest of the decedent in and to the aforesaid bonds was taken into consideration and included as an asset of the estate and succession of the deceased. From the judgment thus rendered and signed, the executrix prosecutes this appeal.
The contention of the executrix is that the bonds were her separate, individual, and paraphernal property, that they were the subject of donations inter vivos, or manual gifts, made to her by her husband during his lifetime. The collector takes the position that the donations, or manual gifts, were made in contemplation of death and, in view of the provisions of LSA-R.S. 47:2401, reading as follows,
"There is hereby levied a tax upon all inheritances, legacies and donations and gifts made in contemplation of death, except such as are hereinafter specifically exempted." (Emphasis supplied.)
that the community interest of the decedent in said bonds is subject to the inheritance tax and should be included in its computation.
The facts, as established upon trial, may be briefly stated. During February, 1942, Doctor Bendel inaugurated a plan of purchasing United States Savings Bonds out of his income, which plan he regularly pursued until his death February 10, 1958. As these bonds were purchased he caused them to be issued to Mrs. Bendel, to whom he presented them as gifts as they were issued. The bonds were placed by her in her safe deposit box in the Central Savings Bank and Trust Company of Monroe. Doctor Bendel retained no interest in, or control over, the bonds, nor, during the entire period of time, did he receive any dividends, interest, or other income or benefit therefrom.
A husband may make a valid gratuitous donation of community movables to the wife whereupon they become her separate property. LSA-C.C. Art. 1746 provides:
"One of the married couple may, either by marriage contract or during the marriage, give to the other, in full property, all that he or she might give to a stranger."
LSA-C.C. Art. 1539 defines a manual gift and the formality in making such a gift. The article provides:
"The manual gift, that is, the giving of corporeal movable effects, accompanied *86 by a real delivery, is not subject to any formality."
Currency in its various forms bank deposits, bills and notes, and stocks and bondsis included in the effects which may be the subject of a manual gift. Donations inter vivos are effective from the date of acceptance, LSA-C.C. Art. 1540, and, where the donee has been put, by the donor, in corporeal possession of the effects given, the donation, though not accepted in express terms, has full effect. LSA-C.C. Art. 1541. Moreover, donations made by a married person to his or her spouse are as irrevocable as if made to a stranger.
In the Succession of Byrnes, 206 La. 1026, 20 So.2d 301, 304, the Supreme Court held that the positive testimony of a widow relative to a gift of money and property to her by her deceased husband during his lifetime, which evidence was corroborated by other evidence, could not be overcome by suspicion founded on the mere improbability of her statements, and, accordingly, held that the funds given to her by her husband during his lifetime as a gift became her individual property, as well as the notes and other property which she acquired with the money so received. In the course of its opinion, the court stated:
"The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality. Civ.Code, Art. 1539. Money may be validly donated by manual gift. Succession of Zacharie, 119 La. 150, 43 So. 988; Gibson v. Hearn, 164 La. 65, 113 So. 766; Guss v. Mathews, 179 La. 1033, 155 So. 765. A man may give to his wife or a woman to her husband, either by marriage contract or during marriage, all that he or she might give to a stranger. Civ.Code, Art. 1746. And a man or woman who contracts a second or subsequent marriage, having a child or children by a former marriage, can give to his wife or she to her husband, either by donation inter vivos or by last will and testament in full property or usufruct, all that portion of his estate, or her estate, as the case may be, that he or she can legally give to a stranger. Civ.Code, Art. 1752. A donation of community property made by the husband to the wife is valid, because the wife alone has the right to complain of a violation of Article 2404 of the Civil Code, which forbids the husband to make a donation of community property, and when she consents the donation is valid. Succession of Williams, 171 La. 151, 129 So. 801."
Accordingly, as the property in the aforesaid case was held not to belong to the succession of her deceased husband, no inheritance tax was assessable thereon. The instant case is distinguishable from the Succession of Raborn, 210 La. 1033, 29 So.2d 53; Winsberg v. Winsberg, 220 La. 398, 56 So.2d 730, in that there the savings bonds involved were payable to the beneficiaries on the purchaser's death and thereby constituted donations mortis causa, as defined by LSA-C.C. Art. 1469.
Quoting, as authority, Succession of Byrnes, supra; LSA-C.C. Art. 1746; Burns v. DeBakey, La.App., 186 So. 374, the court, in Coney v. Coney, 220 La. 473, 56 So.2d 841, 842, stated:
"It is well settled that the husband may make a valid gratuitous donation of community movables to the wife, whereupon they become her separate property."
In view of the provisions of the aforesaid articles of the civil code and the jurisprudence, there can be no serious question of doubt as to the validity and legality of the manual gift of the bonds, herein involved, by Doctor Bendel to his wife; and that, as a consequence thereof, they became her separate and paraphernal property. Nor is there any question as to her control, possession, and separate administration and management thereof.
*87 The decisive issue remaining for discussion and consideration is whether or not Doctor Bendel made the aforesaid donation or manual gift in contemplation of death. While the interpretations have not been uniform, there has been agreement generally upon certain fundamental considerations. That the reference is not to the general expectation of death, which all entertain, is recognized. It must be a particular concern, giving rise to a definite motive. The differentiating factor must be found, we think, in the donor's motive. Death must be "contemplated." Thus, the motive which induces the transfer, and the words, "in contemplation of death," mean that the thought of the expected imminence of death is the impelling cause of the donation and transfer. Therefore, if it is the thought of death as a controlling motive prompting the disposition of property that affords the test, it follows that the statute does not embrace manual gifts or donations inter vivos which spring from a different motive.
It is apparent, therefore, that there can be no precise delimination of the transaction embraced within the conception of transfers "in contemplation of death," as there can be none in relation to fraud, undue influence, or other legal concepts which are applicable to many varying circumstances. The necessity of giving careful consideration to the circumstances of each case to detect the dominant motive of the donor and to give effect to the purpose of a statute is manifest. Nor do we mean to imply that there must be a condition creating a reasonable fear death is near at hand. It is sufficient if the contemplation of death is the motive and the inducing cause of the transfer, whether death is imminent, or impending, or not.
There is no showing in the record that the donations in question, in the form of manual gifts, were induced or brought about by the thought of death. The record makes it clear that the gifts were made pursuant to a plan regularly followed over a period of 16 years. There was, therefore, no fear at the time of the transfers that death was near at hand or was even contemplated by the donor. The gifts were intended by the donor to accomplish some purpose desirable to him. The record is devoid of any evidence from which it could be concluded that the donations, or gifts, were made with the thought, or under the motive, of the donor of evading or avoiding inheritance taxes in the event of his death.
The donations made by Doctor Bendel were legal and valid and were made at unsuspicious times and circumstances. It could not be concluded, merely because of his knowledge that, sometime in the future, his demise was certain, that his acts were motivated through a contemplation of death. The mere fact that the plan inaugurated and pursued for many years by Doctor Bendel, in making gifts to his wife, ultimately results in a saving of taxes to his estate, or to his heirs, is no proof that his motive was the avoidance of the payment of taxes or that the gifts were made in contemplation of death.
From the above, and after giving thorough consideration to the facts as established by the record, the applicable codal and statutory provisions, the conclusion is inescapable that the bonds are the separate and paraphernal property of Mrs. Bendel, form no part of the estate and succession of her late husband, and, consequently, should not be included in any computation of an inheritance tax predicated upon his estate and succession, or as may be due by those inheriting from him.
For the aforesaid reasons, the judgment appealed is amended by reducing (1) the amount of tax due by Mrs. Marie Gariepy Bendel to $4,699.50 and (2) the amount of tax due by William L. Bendel, Jr., to $852.48, or a total of $5,551.98, and that, as thus amended, the judgment appealed is affirmed.
Amended and affirmed.