571 So.2d 838 (1990)
David FOGG, Plaintiff, and
Karen F. Stone, Plaintiff-Appellant,
v.
Nita S. FOGG, Defendant-Appellee.
No. 89-641.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1990.
Writ Denied February 8, 1991.
*839 Badon & Ranier, Michael Garber, Lake Charles, for plaintiff/appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Carl D. Rosenblum, New Orleans and Scofield, Bergstedt, Gerard, Mount & Veron, J. Michael Veron, Lake Charles, for defendant/appellee.
*840 Before DOMENGEAUX, C.J., and DOUCET and KNOLL, JJ.
DOMENGEAUX, Chief Judge.
Karen F. Stone appeals summary judgment dismissing her suit against her stepmother, Nita S. Fogg, for the return of $964,000.00 to her father's succession. For the following reasons, we reverse the judgment of the trial court.

FACTS
J. Norman Fogg died testate on January 9, 1987, survived by his widow, Nita Scardina Fogg, and two children from a previous marriage, David Fogg and Karen Fogg Stone. All three survivors were appointed co-executors of Fogg's succession.[1]
Nita Scardina and Norman Fogg were married, apparently for the second time, on May 31, 1986. Prior to this marriage, the parties executed a matrimonial agreement establishing a separation of property regime.
Before and during this marriage to Nita, Norman wrote 30 checks totaling $964,000.00, payable to the order of "Nita S. Fogg" or "Nita FoggSpecial Account." Nita deposited these checks in her bank account before Norman died.
David and Karen filed this suit against Nita seeking the return of this money to Norman's succession. They claim the money was used to construct a home and other permanent improvements on Nita's separate property; therefore, the succession is entitled to reimbursement from Nita pursuant to La.C.C. art. 2367.1.
The trial judge granted summary judgment in favor of Nita after finding (1) Norman's transfer of funds to Nita prior to their marriage was a valid donation inter vivos, and (2) article 2367.1 did not apply to funds transferred after the marriage because the couple lived under a separation of property regime. We disagree with both conclusions.

ARTICLE 2367.1
La.C.C. art. 2367.1 provides:
Buildings, other constructions permanently attached to the ground, and plantings made on the land of a spouse with the separate assets of the other spouse belong to the owner of the ground. Upon alienation of the land, legal separation, or termination of the marriage, the spouse whose assets were used is entitled to reimbursement of the amount or value that the assets had at the time they were used. (Emphasis added.)
It establishes a special rule of accession between spouses, in derogation of the general rule of La.C.C. art. 493. Although this article is in the Civil Code chapter entitled "The Legal Regime Of Community Of Acquets And Gains," its text makes no reference to the existence of a community. While La.C.C. arts. 2366 and 2367, which also govern reimbursement between the spouses for improvements on immovable property, apply only "upon termination of the community," Article 2367.1 may be triggered upon "... legal separation, or termination of the marriage." (See text above). In Symeonides, Developments in the Law, 1983-1984Property, 45 La.L. Rev. 541, 554 (1984), the author suggests the article contemplates situations where there is no community.
The authors of Spaht and Hargrave, Matrimonial Regimes, 16 Louisiana Civil Law Treatise § 7.17, have taken a different approach. They reason that in the absence of a community, the general rule of accession in article 493 applies. However, the third paragraph of that article states:
When buildings, other constructions permanently attached to the ground, or plantings are made on the separate property of a spouse with community assets or with separate assets of the other spouse and when such improvements are made on community property with the separate assets of a spouse, this *841 Article does not apply. The rights of the spouses are governed by Articles 2366, 2367, and 2367.1. (Emphasis added.)
Interpreting articles 2367.1 and 493, they state, at § 7.17, footnote 12:
So, even if the chapter governing a separation of property regime does not contain a provision permitting reimbursement for the use of separate assets of one spouse to improve separate property of the other spouse, Article 493 mandates the application of Article 2367.1 to all spouses regardless of their matrimonial regime. (Emphasis added.)
Thus, whether Article 2367.1 applies by its own terms or through article 493, it seems clear that its rule of accession and right of reimbursement govern spouses separate in property, absent contrary contractual provisions.
The rule of accession established by article 2367.1 is not a matter of public policy. Comment (e) of that article provides "nothing prevents the spouses from contracting for the application of article 493, or from making other contractual arrangements."
After reviewing the matrimonial agreement executed by these parties, we find they did not intend to contract for article 493's general rule of accession. In the agreement, Nita and Norman stated they renounced "the provisions of Revised Civil Code Articles 2334, et. seq., which establish a community of acquets and gains between the said husband and wife." (Emphasis added.) Article 2367.1 does not establish the community of acquets and gains. As noted above, it does not refer to the existence of a community, and can apply where there is no community. In addition to the terms of the agreement, evidence in the record, discussed below, suggests Norman did not intend to renounce this article.
Although we disagree with the trial judge's conclusion that article 2367.1 does not apply solely because the couple opted for a separation of property regime, our holding does not necessarily require its application to the funds expended herein. First, the record at this point does not establishalthough it strongly suggests that the money was spent on improvements to Nita's separate property. Second, if Norman effected a valid donation inter vivos, the funds immediately and irrevocably became Nita's separate property. The money may have then been used for improvements on Nita's property, but it was no longer the separate property of Norman.

DONATIONS INTER VIVOS
A donation inter vivos is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it. La.C.C. art. 1468. The rules of form in the Civil Code require a valid donation inter vivos of movable property to be passed before a notary and two witnesses. The only exception is that of a manual gift of corporeal movables which, when accompanied by real delivery, is not subject to any formality. La.C.C. arts. 1538 and 1539.
In 1982 the legislature enacted special provisions regarding the donation inter vivos of negotiable instruments. La.R.S. 10:3-201(4) provides in part:
Donations inter vivos of negotiable instruments shall be governed by the provisions of this chapter, notwithstanding any other provision of the Louisiana Civil Code or any other law of this state relative to the form of donations inter vivos, to the contrary.
Hence, the courts are no longer required to decide the difficult question of whether negotiable instruments are corporeal movables or whether they represent incorporeal rights. If the instrument is transferred in compliance with the Commercial Code, as adopted in Louisiana, then the donation is deemed valid as to form. Succession of Walker, 533 So.2d 70 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1254 (La.1989).
La.R.S. 10:3-201(4) supersedes the Civil Code in matters of form only. The underlying validity of the donation is a "threshold" requirement controlled by substantive rules on donations contained in the Civil Code. Succession of Jones, 505 So.2d 841 (La.App. 2d Cir.1987). Although the *842 donation may be valid as to form, the substantive requirements of a divestment and donative intent must be fulfilled in order to effect a valid donation. See Blue v. Coastal Club Inc., 524 So.2d 883 (La.App. 3d Cir.1988), writ denied, 525 So.2d 1044 (La. 1988).
In support of her motion for summary judgment, Nita offered relative to Norman's intent (1) her own affidavit; (2) the deposition testimony of Norman's accountant; and (3) copies of the checks and deposit slips showing their credit to Nita's account.
The donee bears the burden of proving the validity of alleged donations. Proof must be "strong and convincing" that the donor intended to give the property. Succession of Broussard, 306 So.2d 399 (La.App. 3d Cir.1975). A litigant's testimony in her own favor to establish a large claim against a succession is received with great caution. Unless strongly corroborated, it cannot serve as a basis for judgment. Succession of Broussard; Succession of McBurney, 162 La. 758, 111 So. 86 (1927). After reviewing the record, we find the trial court was manifestly erroneous in concluding Nita met this burden of proof on summary judgment.
Nita's affidavit does not reveal the circumstances which prompted Norman to transfer the money to her. In the affidavit she merely states, "After I received each check from J. Norman Fogg and deposited the check in my separate bank account, I considered the funds my separate property."
Nita also introduced copies of cancelled checks and deposit slips showing credits to her account. However, as we noted in Succession of Broussard, such records evidence only possession, not donative intent.
Nita argues her testimony is corroborated by the deposition testimony of Norman's accountant, Mr. Robert Wallbillich. In his deposition, Mr. Wallbillich stated if Mr. Fogg intended to get repaid, it should have appeared in his personal financial statement. This statement is only Mr. Wallbillich's opinion of how Norman would have listed the contributions in his financial records, and we find it does not suffice as the strong corroboration required in Broussard and McBurney.
In opposition to Nita's motion, defendants offered the deposition of Norman's personal attorney, Conrad Meyer IV. Meyer stated Norman asked him to prepare a new will with the following paragraph:
I have advanced out of my personal funds approximately $761,000.00 for the improvement of Nita's home on Shell Beach Drive in Lake Charles, Louisiana. It is my desire that my executors be aware of these funds that have been advanced by me, and I leave to my executors the decision of whether to seek reimbursement of these funds on behalf of my estate.
Meyer prepared the new will; however, Norman did not sign it before he died.
Summary judgment is available only when the pleadings, depositions and affidavits, if any, show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La.C. C.P. art. 966. The burden is on the party filing a motion for summary judgment to show the absence of a genuine issue as to any material fact. Summary judgment is not appropriate when the outcome of the case depends upon subjective facts such as motive or intent. Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3d Cir.1974), writ denied, 302 So.2d 308 (La.1974).
Nita produced a weak case regarding Norman's donative intent, and it was countered by evidence which strongly suggests Norman did not intend to donate the funds in dispute. We do not suggest the evidence offered by Norman's attorney, Conrad Meyer IV, will ultimately defeat Nita's claim. Its presence merely creates a genuine issue of material fact which precludes summary judgment at this point.

DECREE
For the above and foregoing reasons, the judgment of the trial court is reversed. *843 Costs of this appeal are assessed against appellee, Nita S. Fogg.
REVERSED AND REMANDED.
NOTES
[1] Although suit was initially filed by Karen Stone and her brother David Fogg, only Karen filed an appeal. Thereafter, the trial judge removed the original three co-executors, replacing them with Edward Myrick and Kenneth Perret. The new co-executors filed a motion to be substituted as parties plaintiff, which we hereby grant.