648 So.2d 884 (1995)
Thomas J. GOINGS III
v.
STATE of Louisiana, Through the DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, et al.
No. 94-C-1386.
Supreme Court of Louisiana.
January 17, 1995.
*885 Vincent J. DeSalvo, DeSalvo & Harris, Mack E. Barham, Robert E. Arceneaux, Barham & Arceneaux, Gail N. Wise, Kathy S. Wheeler, Frank J. Ferrara, Jr., for applicant.
Jonathan R. Schmidt, Richard P. Ieyoub, Atty. Gen., for respondent.
LEMMON, Justice.[*]
By this action, plaintiff sought to recover damages for wrist injuries allegedly caused by a state trooper's negligent or intentional actions in improperly handcuffing plaintiff during an arrest and detention for driving while intoxicated. The issue before this court is whether the court of appeal erred in reversing a judgment against the trooper's employer on the basis that the trial court committed manifest error.
The incident occurred shortly before midnight on the evening of October 28, 1987. Plaintiff had eaten dinner with a friend in Baton Rouge and admittedly consumed four to five alcoholic drinks. Before he left Baton Rouge, he also took a tranquilizer that had been prescribed for shingles. While driving his car to Hammond after the dinner, he pulled into a truck weighing station on I-12, stopping behind a truck on the scale.
The state trooper who was called to the station to investigate a complaint of a suspected drunk driver observed plaintiff sitting in his car with the engine running and in gear, in the middle of numerous trucks. Because plaintiff was clearly inebriated and performed poorly on a field sobriety test, the trooper arrested him for driving while intoxicated, handcuffed him, and transported him in the police car to the Hammond Police Department.
Upon arrival at the station, the trooper removed the handcuffs. Plaintiff agreed to take a breath analysis test for alcohol content, but failed to supply the required amount of breath for an accurate reading. Regarding this as a refusal to take the test, the trooper handcuffed him again and transported him to the parish jail in Amite for booking.
When they arrived in Amite, the police removed plaintiff's handcuffs, booked and fingerprinted him, and held him the rest of the night in an unlocked cell. Early the following morning, plaintiff was released on bail. He first went to his parents' home, where he complained of swelling and numbness in his wrists. He then reported to work as a repairman at an automobile body shop, but soon left to consult his family physician for treatment of the wrist injuries. This action eventually ensued.
Plaintiff's petition alleged that his wrist injuries were caused by the trooper's negligent or intentional actions in the improper use of the handcuffs. He asserted that when the trooper handcuffed him at the Hammond Police Station before the ride to Amite, he complained that the cuffs were too tight and asked the trooper to loosen them, but the trooper in response squeezed and tightened the left cuff even more, causing severe injury to his left wrist.
*886 At trial, the trooper testified that he properly applied the cuffs and did not tighten them. He stated that he followed proper police procedures for the use of handcuffs that is, he checked the tightness of the cuffs by inserting his index finger between plaintiff's wrists and the cuffs, and then double-locked the cuffs so that they could not tighten accidently.
The trial court rendered judgment for plaintiff, awarding damages in the amount of $131,731.50. The court found as a fact that the trooper, while handcuffing plaintiff the second time, placed the cuffs too tightly on plaintiff's wrist and tightened the left cuff more after plaintiff complained. The court credited the testimony of three witnesses and the family physician as to the condition of plaintiff's wrists, and found that the trooper accidently or intentionally caused the injuries by improper cuffing.
On appeal, the intermediate court reversed the judgment in an unpublished opinion, concluding that the trial court was manifestly erroneous in finding plaintiff's injuries resulted from improper cuffing, 636 So.2d 639. The court noted that plaintiff was highly intoxicated when arrested, that his memory of the events of the evening of the arrest was not entirely accurate, that no one involved in the booking and fingerprinting at the Tangipahoa Parish jail noticed any injury to plaintiff's wrists, and that plaintiff did not complain to anyone at the jail about any injury to his wrists. Further, the court ruled on the testimony of two experts on arrest procedures and the use of handcuffs, who testified that wrist injuries can occur when an arrestee "fights the handcuffs," even if the cuffs are properly applied. The court of appeal concluded that this case did not involve a choice between two reasonable versions of the events, because plaintiff's version was "implausible on its face" since he was intoxicated at the time of his arrest, could not recall certain details, and incorrectly remembered other details. The court accordingly found manifest error in the trial court's judgment.
This court then granted plaintiff's application for certiorari. 94-1386 (La. 9/23/94); 642 So.2d 1303. Our review of the record reveals considerable support for the trial court's findings.
Michael Pressler picked up plaintiff on his release from jail and drove him to his parents' home. The first thing plaintiff told Pressler was that his wrists and hands were numb from the handcuffs. Plaintiff's hands, particularly the left wrist, were discolored, and Pressler could see marks on plaintiff's wrists where the handcuffs had been applied.
When plaintiff arrived at the family home after his release, his parents observed that his wrists were discolored and swollen, and indentations from the handcuffs were visible on his wrists. Plaintiff's mother also testified that her son had welts on his wrists. A neighbor who was at the parents' home corroborated these observations.
Plaintiff consulted his family physician, Dr. Adolph Cronan, about the injuries to his wrists within several hours of his release from jail. Plaintiff told the doctor that the trooper had locked the cuffs too tightly and then tightened them further when he complained. Dr. Cronan observed mild swelling and discoloration on both wrists, particularly the left wrist, and noted that plaintiff suffered pain on motion and a decrease in range of motion. No abrasions or cuts were visible, but plaintiff reported numbness in his hands.
Dr. Cronan diagnosed plaintiff's condition as a compression injury to the radial and ulna nerves in both wrists which was worse in the left wrist. The doctor stated that his findings were consistent with plaintiff's complaint about the trooper's improper application of the handcuffs. He opined that the injury did not result from plaintiff's struggling against the handcuffs, because there were no abrasions or cuts in the skin which would be expected if such struggling had occurred.
Dr. Cronan treated plaintiff with splints to immobilize the wrists, ultrasound physical therapy to reduce swelling, sedatives, and eventually cortisone injections. When plaintiff failed to improve and continued to experience pain, Dr. Cronan referred him to a number of specialists.
Dr. William Gladney, a neurologist, examined plaintiff on November 30, diagnosing plaintiff's condition as a radial nerve sensory neuropathy secondary to a compression injury *887 to the left wrist. The doctor's findings were consistent with the history given by plaintiff of the handcuffing incident. Subsequent examinations in January and February of 1988 revealed continued pain from the nerve injury.
Dr. Joe Morgan, an orthopedic surgeon, observed in December of 1987 that there was some tenderness over the nerves in the left wrist consistent with a nerve injury, as well as diminished sensation in the fingers. The results of a nerve conduction test confirmed Dr. Morgan's opinion that plaintiff was suffering from a compression neuropathy to the nerves of the left wrist, and the doctor stated that his injury was consistent with overly tight handcuffing. Plaintiff underwent occupational therapy and was treated with anti-inflammatory medication.
In April of 1989, eighteen months after sustaining the wrist injury, plaintiff consulted Dr. David Kline, a neurosurgeon, complaining of reduced sensation in his hands and tingling in his fingers which radiated up his arms. Dr. Kline concluded that plaintiff sustained a compression injury to the wrist nerves several years earlier which caused nerve loss and resulted in ongoing symptoms of pain and tingling. After an electromyogram, Dr. Kline definitely diagnosed plaintiff's condition as cutaneous neuropathies involving both wrists, somewhat more severe in the left wrist, which were consistent with his history of injury from improper handcuffing.[1]
Dr. Kline performed surgery on plaintiff's left hand to decompress the nerves. The surgery relieved, but did not totally eliminate, plaintiff's symptoms.
Thus, the consistent testimony of the doctors and of plaintiff's family and friends supported the trial court's finding of injury to plaintiff's wrists from improper handcuffing. Additionally, plaintiff's co-workers testified that plaintiff was unable to continue performing his work as an automobile body repairman after the injury. The manager of the body shop testified that plaintiff was an excellent worker whose work was always satisfactory and who never missed work until the morning that he reported late, with red indentations in both wrists, and left work to go to a doctor. Because plaintiff was unable to resume his work as a repairman after the loss of feeling in his hands and the loss of grip in his left hand, the manager shifted him to clerical work and eventually laid him off under an expense reduction plan.
The court of appeal, despite this wealth of evidence that plaintiff incurred wrist injuries from improper handcuffing, concluded that the judgment of the trial court was manifestly erroneous.
An appellate court should not disturb a trial court's factual findings when there is sufficient evidence in the record to provide a reasonable basis for those findings. Canter v. Koehring, 283 So.2d 716 (La.1973); Rosell v. Esco, 549 So.2d 840 (La.1989). Where there is conflicting testimony, reasonable credibility evaluations and reasonable factual inferences by the trier of fact are entitled to great weight and should not be disturbed on appellate review, even though the reviewing court may feel that its own evaluations and inferences are at least as reasonable. Canter v. Koehring, 283 So.2d at 724; Rosell v. Esco, 549 So.2d at 844. The court in Canter explained:
The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
283 So.2d at 724. See also Virgil v. American Guarantee and Liab. Ins. Co., 507 So.2d 825 (La.1987).
In this case, there were two permissible views of the evidence: plaintiff's wrist injuries resulted either from the trooper's negligent or intentional actions in improperly applying the handcuffs, or from plaintiff's own struggling against properly applied handcuffs. The key difference between the *888 two versions was whether the handcuffs were applied properly or improperly. The evidence provided a sufficient basis for the trial court's acceptance of the former version.
Plaintiff's own out-of-court statements and trial testimony consistently asserted that his wrist injuries resulted from improper and overly tight handcuffing by the trooper. Although plaintiff was inebriated and did not accurately recall every detail of the evening, the medical evidence clearly supported his claims of injury from improper handcuffing. Significantly, the doctor who examined plaintiff within hours of the incident found no evidence of abrasions, cuts, skin breaks, or blistering of the skin that would be expected when a person struggled against handcuffs to the extent necessary to cause injury to the nerves. Furthermore, the trooper testified that plaintiff was cooperative and did not resist arrest in any way, an admission which militates against a conclusion that plaintiff's injuries, more likely than not, were self-inflicted by plaintiff's struggling against the cuffs. Although Dr. Cronan conceded that wrist injuries potentially can result from an arrestee's isometric pushing against the handcuffs, the preponderance of medical evidence supported the trial court's factual conclusion that plaintiff's wrist injuries resulted from compression consistent with improper handcuffing.
Because the trial court's factual findings were adequately supported by the record, the trial court's judgment in plaintiff's favor was not manifestly erroneous. The court of appeal erred in reversing and substituting its own judgment for that of the trial court.[2]
In oral argument and supplemental brief to this court, plaintiff also raised the issue of the rate of interest in the judgment. The trial judge awarded interest from the date of judicial demand through the date of judgment at the rate of six percent per annum in accordance with La.Rev.Stat. 13:5112 C, which provides for pre-judgment interest on personal injury claims against the State. However, this court has held that the six percent limitation on pre-judgment interest payable by the State is unconstitutional. Rick v. State, Dept. of Transp. and Dev., 93-1776, 93-1784 (La. 1/14/94); 630 So.2d 1271, 1277. The proper rate of judicial interest from date of judicial demand until judgment is to be calculated in accordance with the annual published judicial interest rates as provided by La.Civ.Code art. 2924.
For these reasons, the judgment of the court of appeal is reversed, and the judgment of the trial court is reinstated in all respects except that the rate of interest from the date of judicial demand until judgment is to be calculated as provided in La.Civ.Code art. 2924.
NOTES
[*] Judge William Norris, III, Court of Appeal, Second Circuit, sitting by assignment in place of Justice Pike Hall, Jr.

Norris, J., not on panel. Rule IV, Part 2, § 3.
[1] Dr. Kline explained that pressure from handcuffs which are too tight is transmitted to the nerve, and deforms and compresses the nerve. Such nerve compression can cause a decrease in the amount of insulation around the nerve fibers which affects the ability of those fibers to conduct nerve impulses, or produces a temporary reduction in the function of those nerves. Compression of the nerves can also cause degeneration of the nerves.
[2] The parties do not dispute the quantum of the award.