655 So.2d 357 (1995)
Mary Cocks HAWES
v.
Owen Bennett HAWES.
No. 94 CA 1088.
Court of Appeal of Louisiana, First Circuit.
April 7, 1995.
Rehearing Denied June 21, 1995.
*359 Donna Wright Lee, Baton Rouge, for plaintiff-appellee Mary Cocks Hawes.
C. John Caskey, Baton Rouge, for defendant-appellant Owen Bennett Hawes.
Before WATKINS and FOGG, JJ., and TANNER[1] J. Pro Tem.
FOGG, Judge.
Owen Hawes, the defendant in an action initiated by his former wife, Mary Cocks Hawes,[2] appeals the judgment of the trial court partitioning the property belonging to him and his former wife.
Prior to their marriage on October 27, 1973, the parties established a separate property regime with a matrimonial agreement. On July 3, 1991, Mr. Hawes filed a petition for divorce; the parties were divorced on February 13, 1992.[3] On April 16, 1992, Mrs. Hawes filed a petition for the return of her separate property and for the partition of the jointly owned property. Mr. Hawes answered the petition and sought reimbursement of Mrs. Hawes' virile share of their joint obligations which he alleged he had paid.
The trial court rendered judgment awarding each party his or her property and denying Mr. Hawes reimbursement due to lack of documentary proof. On appeal, Mr. Hawes contends that Mrs. Hawes did not bear her burden of proof on her ownership of the items awarded to her as separate property and the items designated as jointly owned. More specifically, he contends that the trial court erred in holding that a piano was jointly owned. Additionally, Mr. Hawes claims that the trial court based the partition of the jointly owned property on values which were not proven by competent evidence and that the trial court erred in refusing his demand for reimbursement.
In determining the ownership of specific property, the trial judge found that the assets *360 which were not gifts belonged to the party testifying that he or she had purchased them. He reasoned that both parties were gainfully employed, and thus, each party was able to pay for his or her purchases, although there were no receipts, canceled checks or other proof of payment. The judge determined that the jointly owned property consisted of those items which either one or both parties testified they received as wedding gifts as well as those items which neither party could remember purchasing.
Mr. Hawes contends that, as the plaintiff, Mrs. Hawes had the burden of establishing a prima facie case of ownership by a preponderance of the evidence. He complains that Mrs. Hawes relied only on her testimony that she purchased certain items and failed to offer any documentary evidence, such as receipts, charge slips or canceled checks, as proof. According to Mr. Hawes, Mrs. Hawes generally had much less income than he did and she had the means to purchase items with his separate funds; thus, he contends, it is more probable than not that his funds were actually used to pay for the items she claimed she had purchased.
A court of appeal may not set aside a trial court's factual findings unless there is manifest error or they are clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though an appellate court may feel that its own evaluations and inferences are as reasonable. Goings v. State of Louisiana, Through Department of Public Safety and Corrections, 94-1386 (La. 1/17/95), 648 So.2d 884. When findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact's findings, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what was said. Where a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell, 549 So.2d at 845.
The trial judge found that Mrs. Hawes' testimony was credible and sufficient to meet her burden of proof. The property being partitioned consisted of items such as pictures, dinnerware, vases, china, crystal and the like, accumulated over a sixteen year period in the marriage of eighteen years. To require Mrs. Hawes to produce documentary proof of purchase where neither party possessed such proof at the time of the partition proceeding simply because she was the party bringing the action would be manifestly unfair. Moreover, Mr. Hawes did not directly contradict Mrs. Hawes' testimony that she purchased certain items; he corroborated her testimony as to some, and as to the remainder, he did not know whether Mrs. Hawes had purchased them. Mr. Hawes contended that while she may have physically paid for the items, his funds were ultimately used to pay for them because he had a greater income. The trial judge rejected this contention, finding that Mrs. Hawes had sufficient income to pay for the items she testified she purchased. The testimony showed that Mrs. Hawes' income from 1980 through 1986 was approximately $35,000 annually. After a thorough review of the record, we cannot say that the trial judge's findings regarding Mrs. Hawes' separate property are manifestly wrong.
Regarding the jointly owned property, Mr. Hawes disagrees with the trial judge's reasoning that where "no one could explain to me who actually acquired that asset, then I had no other option but to conclude that the asset was jointly owned, ...." We find no error in the trial court's reasoning. Where the assets were either owned by one of the parties or both of the parties jointly, and neither party could even recall who acquired the asset, it would be unfair to deny Mrs. Hawes an ownership interest simply because she was the plaintiff. The fact that Mrs. Hawes could not prove that she purchased the property did not prove that Mr. Hawes had purchased it.
Mr. Hawes claims that LSA-C.C. art. 530 applies. According to LSA-C.C. art. 530, in pertinent part, "The possessor of a corporeal movable is presumed to be its owner." *361 However, according to the official comment to article 530, the presumption is generally rebutted where the possession is precarious, equivocal, clandestine or due to fraud. The testimony showed that Mr. and Mrs. Hawes moved from their matrimonial home into a much smaller apartment in 1986 or 1987. They were forced to store many of their possessions, some in his parents' attic, some in her parents' garage, and some with their daughters. Mrs. Hawes left the matrimonial domicile on June 1, 1989, and did not retrieve any of the possessions in storage. She testified that Mr. Hawes let her take only a few things when she left, that the separation was a trial one and that she began demanding some of her things one and a half years later. She also testified that she was reluctant to involve Mr. Hawes' parents, who were storing much of the parties' property, in the issue. Therefore, even if the presumption of LSA-C.C. art. 530 is applied, the testimony shows that Mr. Hawes' possession was precarious and equivocal.
Mr. Hawes contends that the trial court erred in finding the piano to be jointly owned, referring to both parties' testimony that Mr. Hawes purchased the piano with his funds. Mrs. Hawes testified that the piano was a gift from Mr. Hawes to her; Mr. Hawes testified that he did not ever intend to donate it to her. The trial court apparently based its finding on Mr. Hawes' testimony that he bought the piano to be available to all in the family who chose to use it and he considered it to be a family gift. Mr. Hawes' testimony established that he had the requisite intent to donate the piano to his family. Based on Mr. Hawes' testimony, the trial judge concluded the piano was jointly owned, and we cannot say this finding was manifestly erroneous.
According to the trial court's judgment, Mr. and Mrs. Hawes received jointly owned property valued at $6,187 and $6,560, respectively, and Mrs. Hawes owed one-half of the difference between the values to Mr. Hawes. Mr. Hawes contends that the trial court erred in valuing the jointly owned movables based upon a sworn detailed descriptive list prepared by Mrs. Hawes which was not offered into evidence at the trial.
Unlike the partition of the property in a marriage governed by the legal regime of community property, which is controlled by LSA-R.S. 9:2801, this partition proceeding is controlled by the articles in the Code of Civil Procedure concerning partition between co-owners. LSA-C.C.P. arts. 4601-4614.[4] Hargrave, Matrimonial Regimes, 52 La.L.Rev. 655, 659 (1992). A sworn detailed descriptive list can be used in such a partition proceeding. LSA-C.C.P. art. 4604; see also Liles v. Brown, 471 So.2d 1078 (La.App. 3d Cir.1985). The trial judge based the values given to the jointly owned property on the values in a detailed descriptive list which counsel for Mrs. Hawes supplied him with at the beginning of the trial; however, this list was not offered into evidence at the trial. Furthermore, counsel for Mr. Hawes objected to Mrs. Hawes' reference to the list in her testimony because it was not in evidence; he also moved for an involuntary dismissal at the conclusion of Mrs. Hawes' case, based partly on her failure to offer the list into evidence. The record shows that without the list in evidence, with the exception of four assets, the trial judge had nothing to base his valuations on as Mrs. Hawes did not testify regarding each asset's specific value, but instead relied upon the list.
Mrs. Hawes' contention that it was unnecessary to offer the list into evidence because it was attached to the original petition and therefore part of the record under LSA-C.C.P. art. 853 is without merit.[5] Initially, *362 we note that the list the trial judge relied upon at the trial was not the detailed descriptive list attached to the petition. Furthermore, even if it were the same list, it would simply be a part of the pleadings and not evidence; thus, it could not be considered by this court in our review of the judgment on the merits. Jackson v. Gordon, 381 So.2d 520 (La.App. 1st Cir.1980). Also without merit is Mrs. Hawes' contention that the values should be deemed admitted because Mr. Hawes did not file his own detailed descriptive list, attend any of the scheduled depositions, traverse the detailed descriptive list, or appoint any expert. Mr. Hawes disputed the values in the list through his allegation in his answer that Mrs. Hawes' detailed descriptive list was incomplete and inaccurate.
Mrs. Hawes testified concerning the values of the four assets. Mrs. Hawes testified that the replacement value of the piano was $1500; the entire set of Royal Doulton china, $1800; the wedding crystal, $480; and the painting of the boy feeding the ducks, $450. Regarding these assets, we find the trial court did not err in basing his valuations on the figures Mrs. Hawes gave in her testimony.
Therefore, Mr. Hawes' contention that the trial judge erred in basing the partition of the jointly owned property on values which were not proven by competent evidence has merit insofar as the valuations which were based solely on the detailed descriptive list. However, as to the values of the four assets for which testimony was given, the trial judge did not err in his valuations. We affirm that part of the judgment valuing those four assets, but reverse that part of the trial court's judgment valuing the remainder of the jointly owned property. Consequently, we also reverse the partition of the jointly owned assets.
Mr. Hawes contends that the court erred in denying his claim for reimbursement. Under LSA-C.C. art. 493, when a spouse uses his separate funds to construct buildings on or to make other constructions which are permanently attached to the separate property of the other spouse, LSA-C.C. art. 2367.1 applies. LSA-C.C. art. 2367.1 provides that a spouse who uses his separate assets to make buildings or other constructions permanently attached to the separate property of the other spouse is entitled to reimbursement for the value that the assets had at the time they were used. These codal articles providing a right of reimbursement are applicable even where the parties opt for a separate property regime, absent contrary provisions in the matrimonial agreement. Fogg v. Fogg, 571 So.2d 838 (La.App. 3d Cir.1990), writ denied, 575 So.2d 372 (La. 1991). Mr. Hawes testified he made $210,000 in mortgage payments on the matrimonial home, which was only in Mrs. Hawes' name. Yet, he offered no documentary proof of these payments. Unlike the case of the movable assets of much less value for which neither party had any documentary proof of purchase, Mr. Hawes could have easily supplied the court with canceled checks or bank statements showing the mortgage payments. Furthermore, while Mrs. Hawes testified that Mr. Hawes did make a majority of the mortgage payments, both parties testified that while Mr. Hawes was unemployed, Mrs. Hawes made some of the mortgage payments, distinguishing this case from Freeman v. Freeman, 552 So.2d 636 (La.App. 2d Cir.1989), upon which Mr. Hawes relies. Therefore, while Mr. Hawes may have had a right of reimbursement, he did not prove that he was entitled to it, and the trial court did not err in denying his claim. For these reasons, the judgment of the trial court is affirmed with respect to the trial court's determination of each party's separate property, the denial of Mr. Hawes' claim for reimbursement, the identification of the jointly owned property, and the valuation of the piano, the entire set of Royal Doulton china, the wedding crystal, and the painting of the boy feeding the ducks. With respect to all other valuations, the judgment of the trial court is reversed, and, therefore, the allocation of the jointly owned property based on those valuations is also reversed. Costs of this appeal are to be paid equally by both parties.
REVERSED IN PART, AFFIRMED IN PART.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Mrs. Hawes remarried and at the time of the hearing, her last name was Percy.
[3] Although Mrs. Hawes alleges in her petition that the divorce judgment was rendered on January 13, 1992, the judgment of divorce is dated February 13, 1992.
[4] While the introductory language of LSA-R.S. 9:2801 states,

When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising from the matrimonial regime, either spouse, upon termination of the matrimonial regime, or as an incident of the action which would result in a termination of the matrimonial regime, may institute a proceeding, which shall be conducted in accordance with the following rules ... the "following rules" only concern community property.
[5] LSA-C.C.P. art. 853 states, in pertinent part, "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."