STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-1483


RICHARD H. LEE, III

VERSUS

JANE LEE, BORN BARHAM


************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 2001-2750,
HONORABLE GUY BRADBERRY, DISTRICT JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of Jimmie C. Peters, Michael G. Sullivan, and Glenn B. Gremillion, Judges.


**REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.**

Michael R. Garber
Attorney at Law
1801 Ryan Street
Lake Charles, Louisiana 70601
(337) 494-5500
Counsel for Defendant/Appellant:
      Jane Lee, born Barham

Walter M. Sanchez
Lorenzi, Sanchez & Palay, L.L.P.
Post Office Box 3305
Lake Charles, Louisiana 70602-3305
(337) 436-8401
Counsel for Plaintiff/Appellee:
      Richard H. Lee, III

SULLIVAN, Judge.

Jane Lee appeals the trial court's judgment which awards her former husband, Richard Lee, monies for payments he made on her separate debts with his separate funds. For the following reasons, we reverse in part, affirm in part, and render.

### Facts

Richard and Jane were married on July 29, 1976. They were divorced on September 14, 1999. Prior to their marriage, they contracted to live under a separate property regime and did so throughout their marriage. In 1988, they purchased an interest in the Audubon Agency, an insurance business. Richard purchased a 26% interest, and Jane purchased a 25% interest in the business. To finance the purchase, Richard borrowed $38,250.00 individually. Jane admitted in requests for admissions that none of her separate funds were used to repay the debt. However, the parties stipulated that payments on the loan were made with funds from an account into which they both deposited funds. Payments made from this "joint account" on Jane's behalf totaled $18,750.00, representing her 25% interest in the agency; payments on Richard's behalf totaled $19,500.00, representing his 26% interest in the agency.

During their marriage, Richard and Jane lived in Jane's home. At times, Richard deposited separate funds in the amount of $8,933.54 into Jane's separate account from which her mortgage payments were paid. Additionally, checks totaling $19,890.00 issued on the Audubon Agency account were deposited into Jane's separate account to make her mortgage payments. Rick's 26% interest in these agency funds equals $10,140.00.

After the divorce, Richard filed suit, seeking to recover his separate funds paid on the Audubon Agency loan, which represent Jane's interest in the agency and his separate funds paid on Jane's mortgage. Jane answered, denying any debt was owed

and seeking set-off for amounts she paid toward their joint obligations and toward Richard's separate obligations.

After a hearing at which the parties stipulated to the above information, the trial court awarded Richard $9,375.00 for payments made on Jane's behalf on the Audubon Agency loan, $8,933.54 for payments made with his separate funds on Jane's mortgage, and $10,140.00 representing his interest in the Audubon Agency funds paid on Jane's mortgage. On August 5, 2003, the trial court signed a judgment in Richard's favor in the amount of $28,448.54. Jane appeals, assigning as error all of the trial court's awards.

### *Discussion*

### *Audubon Agency Loan*

Jane first assigns as error the $9,375.00 awarded to Richard for payments made on the Audubon Agency loan. She asserts that the trial court's award results in her paying $28,125.00 of the loan and Richard only paying $9,375.00.

The parties stipulated that the funds deposited into the account from which payments were made on this loan were "joint funds" because each party had deposited funds into the account and neither could establish what amounts were their separate funds. Accordingly, Richard did not prove what amount of his separate funds was used to make payments on Jane's behalf. Furthermore, Jane pleaded set-off in her answer, and she is entitled to credit for her separate funds used to pay on Richard's portion of this indebtedness. For these reasons, we reverse the trial court's award of $9,375.00 to Richard.

2

***Mortgage Payments on Jane's Separate Property***

Jane does not deny that Richard's separate funds and Audubon Agency funds in which he had an interest were used to make payments on her home mortgage. Rather, she asserts that he is not entitled to recover 100% of those funds. This issue is not specifically addressed by the Louisiana Civil Code.

Jane argues that the reimbursement rules applicable to community property regimes also apply to Richard's claims. Relying on jurisprudence concerning reimbursements for payments made on community obligations with separate funds and for payments made on separate obligations with community funds, she contends that Richard is only entitled to recover the amount which represents the principal reduction on her mortgage, not interest, taxes, or insurance also paid in conjunction with her mortgage. In *Willis v. Willis*, 454 So.2d 429 (La.App. 3 Cir. 1984), this court held that only principal reductions made on a spouse's separate mortgage with community funds, when the mortgaged property was used as the community's residence, were reimbursable to the spouse obligated under the mortgage. The court reasoned: 1) the spouse, whose separate mortgage was paid with community funds, had not reserved the fruits and revenues of his separate property, so they belonged to the community; 2) use of that spouse's residence by the community was "an enjoyment of the 'natural and civil fruits' of the separate property"; 3) the payment of interest on the separate mortgage was the cost to the community for using the separate property; and 4) payment of principal on the separate mortgage "went to the satisfaction of a separate obligation under article 2364, as well as to the 'acquisition . . . or benefit of the separate property' under article 2366, and did not benefit the community at all." *Id*. at 431.

3

Jane and Richard opted for a separate property regime. Therefore, there were no "natural and civil fruits" of Jane's separate property which became community property, and this analysis is inapplicable to Richard's claims.

Jane also cites *Hawes v. Hawes*, 94-1088 (La.App. 1 Cir. 4/7/95), 655 So.2d 357, *writ denied*, 95-1904 (La. 11/3/95), 661 So.2d 1388, and *Fogg v. Fogg*, 571 So.2d 838 (La.App. 3 Cir. 1990), *writ denied*, 575 So.2d 372 (La.1991), in support of her position. In these cases, the courts held that La.Civ.Code art. 2367.1 applies to divorced persons who lived under a community property regime *and* to divorced persons who lived under a separate property regime. Article 2367.1 provides:

> Buildings, other constructions permanently attached to the ground, and plantings made on the land of a spouse with the separate assets of the other spouse belong to the owner of the ground. Upon alienation of the land, legal separation, or termination of the community, the spouse whose assets were used is entitled to reimbursement for the amount or value that the assets had at the time they were used.

However, a literal reading of Article 2367.1 indicates that it is not applicable to the facts presented by Richard's claims.

Richard contends that his claims should be governed by general principles of law. In KATHERINE S. SPAHT & W. LEE HARGRAVE, LOUISIANA CIVIL LAW TREATISE, MATRIMONIAL REGIMES, § 7.17, at p. 413 (2d ed. 1997), the authors observed:

> Despite [jurisprudence which applies reimbursement principles to the use of a spouse's separate property to satisfy a separate obligation of the other spouse], the only explicit *legislative* authority for applying reimbursement principles when a spouse's separate property benefits the other spouse's separate property is Article 2367.1. Rather than apply Article 2367.1, which clearly does not apply to the use by a spouse of separate property to satisfy a separate obligation of the other spouse or to spouses who have a separation of property regime, the court should rely on general principles of law to permit recovery – such as mandate, management of the affairs of another (*negotiorum gestio*), or unjust enrichment.

In *Toups v. Toups*, 97-393 (La.App. 3 Cir. 10/8/97), 702 So.2d 822, this court rejected the argument that, pursuant to *Hawes*, 655 So.2d 357, and *Fogg*, 571 So.2d

4

838, all of the reimbursement rules applicable to community property regimes are applicable to separate property regimes. In *Toups*, the former wife claimed that during the marriage her husband had undertaken the management of her separate property, had mismanaged it, and was liable to her for his mismanagement. The trial court granted the former husband's exception of no cause of action, agreeing that the former wife had failed to allege a fiduciary relationship which required him to make an accounting to her.

The former wife had asserted at the trial level that her claim presented an issue of *negotiorum gestio*. Because she had consented to her husband's management of her property, this court determined *negotiorum gestio* was inapplicable. *See* La.Civ.Code art. 2292, which requires that one person act on another's behalf without his authority. On appeal, she asserted that her former husband was liable to her under the principle of mandate. After distinguishing *Hawes*, 655 So.2d 357, and *Fogg*, 571 So.2d 838, and considering Professors Spaht and Hargrave's observations, this court remanded the matter to allow her to amend her pleadings to allege facts which stated a cause of action under the law of mandate.

Pursuant to our decision in *Toups,* 702 So.2d 822, we decline to apply the provisions governing community property regimes to the claims presented herein and follow the recommendations of Professors Spaht and Hargrave instead. Accordingly, we now consider which general principles of law govern Richard's claims.

Mandate is "a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." La.Civ.Code art. 2989. *Negotiorum gestio*, or management of affairs, is "when a person, the manager, acts without authority to protect the interests of another, the

5

owner, in the reasonable belief that the owner would approve of the action if made aware of the circumstances." La.Civ.Code art. 2292.

The evidence established that Richard's separate funds and the Audubon Agency funds were deposited into Jane's account and that her mortgage payments were made from that account. There is no evidence of who wrote the checks for the payments, but Jane does not assert that she did not consent to the payments. Therefore, *negotiorum gestio* is inapplicable. *See* La.Civ.Code art. 2292. Furthermore, there is no evidence that Jane authorized Richard to manage the account from which her mortgage payments were made; therefore, Richard was not her mandatary. *See* La.Civ.Code art. 2989.

Enrichment without cause is defined by La.Civ.Code art. 2298:

A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.

The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.

The situation presented here falls within the parameters of Article 2298: Jane was enriched by Richard's contributions toward payments on her mortgage; the enrichment was not the result of a valid juridical act; and the law does not provide Richard any other remedy. Richard and Jane could have, but did not, address the claims presented here in their contract or in an amendment to their contract. We conclude that Richard is entitled to recover $8,933.54, all of his separate funds paid on Jane's

6

mortgage, and $10,140.00, which represents his interest in the Audubon Agency funds used to pay on Jane's mortgage.

***Decree***

The trial court's award of $9,375.00 in favor of Richard Lee is reversed; the awards of $8,933.54 and $10,140.00 in his favor are affirmed. Costs are assessed one-third to Richard Lee and two-thirds to Jane Lee.

**REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.**