MOORE, J.
 

 |! Gilford Raymond Birch (“Gil”) appeals a judgment that rejected his claim for the return of separate funds given to or taken by his former wife, Kim Colvin Birch (“Kim”), during their marriage and under a matrimonial agreement that established a separate property regime. Kim answers the appeal, contesting the portion of the judgment that denied her exceptions of prescription and no right of action. We affirm in part, reverse in part and remand.
 

 The Matrimonial Agreement
 

 Gil and Kim got married on October 26, 1991. Gil was a pharmacist who owned The Corner Drug Store in Ruston, and Kim was an employee there. One day before the wedding, they executed a Matrimonial Agreement Before Marriage (“the agreement”) which rejected the community property regime established a separate property regime. In pertinent part, the agreement stated:
 

 1.
 

 All property now owned by either of said appearers shall remain the separate property of that one of the appearers to whom such property belongs, and all revenues, fruits and increases arising from such respective properties shall also be considered, and remain, the separate property of the respective appear-er[.] * * *
 

 2.
 

 The provisions of the preceding paragraph shall apply regardless of which of the appearers shall administer or manage the revenues, fruits, increases, property or proceeds in question; that is to say, the question as to which appearer administered or managed * * ⅜ the revenues, fruits, increases, property or proceeds of any property, shall in no way affect or modify the provisions of the
 
 *798
 
 preceding paragraph, and in no way create a community interest there; the fact that either appearer may assist the other in the administration or management of the | ¡.property of the other shall not create the presumption of a claim for remuneration in favor of that appearer assisting the other, but all such services shall be considered and held as gratuitously rendered to each other.
 

 3.
 

 More particularly but not by way of limitation, all accretions or increases in the value of separate property during the marriage, however same shall occur, shall be the separate property of the appearer to whom the separate property that has increased belongs and no claim for remuneration or reimbursement should exist in favor of the appearer to whom the property does not belong.
 

 4.
 

 Any increases or improvement of the separate property of either appearer, as separate property is set forth in this agreement, arising or made during the marriage of the appearers through the result of the common labor, expense, or industry of the appearers, shall not create any right to a reward in favor of that appearer * * * to whom the property which has been increased or improved does not belong. * * *
 

 6.
 

 All property acquired or wages earned by either appearer following their marriage, shall be considered separate property.
 

 Procedural Background
 

 The parties separated in late December 2002. In February 2003, Kim filed for an Art. 102 divorce; Gil reconvened for an Art. 103 divorce. Final judgment of divorce was rendered in February 2004.
 

 Gil filed a reconventional demand in February 2004, seeking to settle claims arising from the separate property regime. This was not immediately addressed, however, as the parties litigated custody and support issues that are not before the court on appeal.
 
 [1]
 
 It transpired that because of his own [¡¡drug abuse and irregularities in the handling of controlled dangerous substances at The Corner Drug Store, Gil’s pharmacy license was suspended indefinitely in 2008 and the store’s pharmacy permit placed on five years’ probation.
 

 Gil filed a second supplemental recon-ventional demand in March 2009, demanding “recovery of Gil’s separate funds used by Kim, and * * ⅜ the recovery of the fruits of Gil’s separate funds.” He alleged that during the marriage, he ran the drugstore and made plenty of money, all of which went into the couple’s joint checking account, which Kim balanced and managed. Kim earned a small amount of money from running a gift shop called “Kim’s Corner” in, or connected with, the drugstore, but always placed her wages in one of her separate accounts. Kim also bought three pieces of real estate in her own name: (1) in 1995, she bought the office adjacent to the drugstore (“the South Trenton Street property”), for $65,000, and rented this to the drugstore for $800 a month; (2) in September 1995, she bought a house (“the Hilly property”) for $242,000, renovated it for $30,000, and this became the couple’s home; (3) in August 1999, she bought a store on North Bonner Street
 
 *799
 
 (“the Townsend House”) for $93,500, renovated it for $28,000, and this became her free-standing gift shop. Gil alleged that the vast majority of money to buy and maintain these properties came from the parties’ joint checking account, which contained only his wages and was thus his separate property. He itemized these funds and demanded a total of $778,692.05.
 

 14Kim’s answer consisted of general denials, but she also raised several exceptions. By an exception of no right of action, she argued that “many or most” of the claims involved money paid not by Gil but by his corporation, Cupp Drug Store Inc. d/b/a The Corner Drug Store, and hence only the corporation could assert them. By an exception of prescription, she argued that Gil’s claims were essentially for conversion and hence subject to the one-year limitation for torts.
 

 Overview of Trial Testimony
 

 At trial in August 2009, three witnesses testified. Gil confirmed the facts outlined above, identifying one-by-one many of the checks drawn on the couple’s joint account and signed by Kim, to pay for the mortgages, renovations, property tax, inventory for her gift shop, and other expenses arising from her separate property. He also testified that when they got married, Kim had a net worth of about $100,000; during the marriage, working at the drugstore or running the gift shop, she never made more than $3,000 a month; now her net worth is about $900,000. He felt that this simply could not have occurred without the infusion of enormous amounts of his separate property, which he now wanted returned.
 

 Gil’s CPA, James D. Johnson, testified that he had handled the drugstore’s taxes since 1989. He confirmed that several of the checks drawn on the couple’s joint account, and signed by Kim, covered payroll, property taxes and renovations to her separate property.
 

 On cross-examination, Kim conceded much of Gil’s testimony, including that Gil always put his wages in the couple’s joint checking | .^account, which she used to pay the mortgages on her separate property. However, she would not agree that the drugstore was Gil’s separate property and was unable to recall whether her wages ever exceeded $3,000 a month. When asked if she “did not always deposit” her own salary checks into the joint account, she replied, “Not always. No.” She did not dispute that the mortgages, taxes, inventory and other expenses vastly exceeded her income, but insisted that she built up a large reserve because “you save, you save, you save.”
 

 Gil also offered the deposition of a forensic CPA, Susan Whitelaw, who testified that even though Kim never provided all her financial information, the available records showed that from 1996 to 2004, she reported total income of $124,000, but at the end of the same period she had a net worth of $970,000.
 

 Kim presented no testimony except her cross-examination of Gil and of Mr. Johnson.
 

 Neither of Gil’s experts, Mr. Johnson nor Ms. Whitelaw, summarized all his claims, but by post trial brief he itemized the financial records into (1) separate funds used to buy real estate, (2) separate funds paid by the drugstore to Kim or for her benefit, (3) gift shop funds diverted into Kim’s separate account, and (4) rent paid by the drugstore to Kim. These items totaled $793,722.
 

 Kim reiterated her exceptions, and then contested each item on Gil’s list. She asserted that he failed to prove that the money from the couple’s joint account was truly his separate funds; because certain
 
 *800
 
 records were | ¿missing, he failed to prove the source of various transfers; because he never objected to paying the mortgage notes from the joint account, he is now estopped from contesting it; and the parties were actually co-owners of the Hilly property.
 

 Action of the District Court
 

 The district court rendered oral reasons, first rejecting Kim’s peremptory exceptions. The court held that a claim for reimbursement is subject to 10-year prescription, so Gil’s claim was timely, and that as the sole proprietor of the corporation, Gil had the right to pursue the claim.
 

 On the merits, the court noted that the financial records were complex, but found
 
 sua sponte
 
 that the agreement itself waived either party’s right to seek reimbursement. The court cited ¶ 2 (“the fact that either appearer may assist the other in the administration or management of the property of the other shall not create the presumption of a claim for remuneration”), ¶ 3 (“all accretions or increases in the value of the separate property during the marriage, however same shall occur, shall be the separate property of the ap-pearer * * * and no claim for remuneration or reimbursement should exist”), and ¶ 4 (“any increases or improvements of the separate property of either appearer * * * through the result of common labor, expense, or industry of the appearers, shall not create any right to a reward in favor of that appearer”) as disallowing Gil’s claims. Finally, the court rejected the theory of unjust enrichment as inapplicable when the claims are properly resolved by contract.
 

 |7The court rendered judgment denying Kim’s exceptions, rejecting Gil’s claims, and assessing costs one-half to each. Gil has appealed and Kim has answered the appeal.
 

 Discussion: Peremptory Exceptions
 

 By answer to appeal, Kim urges the district court erred in denying her peremptory exception of prescription. Because Gil alleged that she “took from his separate estate” substantial sums, she argues the claim is for conversion, a tort subject to one-year prescription, regardless of how Gil labeled it.
 
 Northern Assur. Co. v. Waguespack,
 
 304 So.2d 865 (La.App. 4 Cir.1974). Gil responds that because the claim is based on an agreement, it is subject to the 10-year prescriptive period of La. C.C. art. 3499.
 

 The 10-year liberative prescription period applicable to personal actions under Art. 3499 applies to a claim for reimbursement of property used to enhance the other spouse’s separate estate.
 
 LeBlanc v. LeBlanc,
 
 2005-212 (La.App. 3 Cir. 11/2/05), 915 So.2d 966, and citations therein. By contrast, the tort of conversion is “an act in derogation of a plaintiffs possessory rights, and any wrongful exercise or assumption of authority over another’s goods, depriving him of the possession, permanently or for an indefinite time”; lack of consent by the owner is a prerequisite.
 
 Quealy v. Paine, Webber, Jackson & Curtis Inc.,
 
 475 So.2d 756 (La.1985);
 
 Fuller v. XTO Energy Inc.,
 
 43,454 (La.App. 2 Cir. 8/13/08), 989 So.2d 298,
 
 writ denied,
 
 2008-2227 (La.11/21/08), 996 So.2d 1107. As Kim’s “taking” was obviously with Gil’s consent, the claim is not one for conversion but, as the district court found, one for reimbursement. This assignment lacks merit.
 

 |sKim also contends that the court erred in denying her exception of no right of action. She argues that many of the transfers of cash came directly from the corporation, not from Gil, ergo only the corporation can sue to recover.
 
 Wall v. First National Bank of Shreveport,
 
 482 So.2d 865 (La.App. 2 Cir.1986). Gil re
 
 *801
 
 sponds that ¶ 1 of the agreement defined all revenues from the parties’ separate property as separate property, and the corporation was admittedly his separate property; hence he was entitled to recover corporate revenues paid to Kim.
 

 The exception of no right of action tests whether the plaintiff has a legal interest in judicially enforcing the right asserted. La. C.C.P. art. 927 A(6);
 
 Skannal v. Bamburg,
 
 44,820 (La.App. 2 Cir. 1/27/10), 33 So.3d 227,
 
 writ denied,
 
 2010-0707 (La.5/28/10), 36 So.3d 254. The personality of a corporation is distinct from that of its members, even if the member is a sole shareholder. La. C.C. art. 24;
 
 Skannal v. Bamburg, supra,
 
 and citations therein. The district court was technically wrong when it said that Gil could pursue the claim “as the sole proprietor of the corporation.” Nevertheless, ¶ 1 of the agreement expressly defines “all revenues, fruits and increases” from each party’s separate property as separate property. The parties plainly intended to treat corporate revenue as Gil’s separate property. For purposes of his reimbursement claims, Gil is the proper party to assert those claims. This assignment of error lacks merit.
 

 Interpretation of Agreement
 

 By seven assignments of error, Gil urges that the district court erred in reading the agreement as barring
 
 all
 
 claims for reimbursement between 19the parties. He suggests that the court misread the agreement in an effort to skirt the harsh result, but that the provisions waiving reimbursement are limited to narrow situations simply not present in this case. He also argues that the court’s reading, which denied any and all forms of reimbursement, completely negated the purpose of the agreement, which was to preserve the parties’ respective estates. Finally, he submits that the court fashioned a “novel theory” that neither party advanced and does not withstand minimal scrutiny.
 

 Kim does not directly address the district court’s reasons for judgment, but states in passing that the conclusion was correct. She mainly asserts failure of proof and factual issues unrelated to the interpretation of the agreement.
 

 In interpreting contracts, courts are guided by the general rules stated in La. C.C. arts. 2045-2057. The cardinal rule is that the interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045;
 
 Amend v. McCabe,
 
 95-0316 (La.12/1/95), 664 So.2d 1183. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046. The words of a contract must be given their generally prevailing meaning; however, words of art and technical terms must be given their technical meaning when the contract involves a technical matter. La. C.C. art. 2047;
 
 Amend v. McCabe, supra; Hollenshead Oil & Gas LLC v. Gemini Explorations Inc.,
 
 45,389 (La.App. 2 Cir. 7/21/10), 44 So.3d 809. Each provision in a contract must be interpreted 110in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050;
 
 Hollenshead Oil & Gas v. Gemini Explorations, supra.
 
 A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. C.C. art. 2053;
 
 Campbell v. Melton,
 
 2001-2578 (La.5/14/02), 817 So.2d 69.
 

 In the absence of specific contractual terms, a separate property agreement preserves the parties’ right to be reimbursed for separate property that was
 
 *802
 
 used to improve the other party’s separate property.
 
 Lee v. Lee,
 
 2003-1483 (La.App. 3 Cir. 3/17/04), 868 So.2d 316; Katherine S. Spaht & W. Lee Hargrave, 16 La. Civ. Law Treatise, Matrimonial Regimes, § 7.17 (3d ed.2007). A matrimonial agreement may establish a separate property regime and waive all rights of reimbursement. In
 
 Sharpe v. Sharpe,
 
 536 So.2d 434 (La.App. 4 Cir.),
 
 writ denied,
 
 540 So.2d 332 (1989), the contract provided as to the “intended husband and wife, that neither shall have any economic claim upon the other[.]” The court found that this waived not only reimbursement of loans to the wife, but also tort claims for damages to the husband’s separate property.
 

 A plain reading of Gil and Kim’s agreement shows, by contrast, that reimbursement is waived only for certain claims. Specifically, ¶ 2 states that “administration or management of the property of the other shall not create a claim for remuneration” and “all such services shall be considered and held as gratuitously rendered[J” This waiver obviously applies only to Inthe value of administration and management services.
 

 Next, ¶ 3 refers to “all accretions or increases in the value of separate property” and states that “no claim for remuneration or reimbursement should exist[.]” Accretion means gradual and imperceptible addition to riparian land by water to which the land is contiguous. La. C.C. art. 499;
 
 Walker Lands Inc. v. East Caoroll Parish Police Jury,
 
 38,376 (La.App. 2 Cir. 4/14/04), 871 So.2d 1258. This case does not involve either riparian accretion or its analog, the incremental growth of an asset by interest, dividends or stock splits.
 

 Similar to ¶ 3’s “increases in the value of separate property” is ¶ 4’s “increases or improvement of the separate property of either appearer[.]” The phrase “increases in the value of separate property” echoes La. C.C. art. 2368, which allows reimbursement when separate property increases in value “as a result of the uncompensated labor or industry of the spouses,” as by changed market conditions or inflation. See, e.g.,
 
 St. Marie v. Roy,
 
 09-953 (La. App. 3 Cir. 2/3/10), 29 So.3d 708,
 
 writ denied,
 
 2010-0517 (La.4/30/10), 34 So.3d 291. The thrust of these provisions is to waive reimbursement for increases which Art. 2368 would allow.
 

 On close examination, we find that the fairly narrow waivers stated in these provisions do not express a general waiver of all claims. By their own terms, they apply only to management fees, accretions, inflationary growth and market fluctuations. Nothing in the agreement waives reimbursement, upon termination of the marriage, of one spouse’s separate funds which were used to improve the other spouse’s separate property. Moreover, a [ ,2general waiver would utterly defeat the purpose of the agreement, which is to preserve each party’s separate estate.
 

 This court is cognizant of the recent case of
 
 Barber v. Barber,
 
 2009-0780 (La.App. 1 Cir. 5/7/10), 38 So.3d 1046, which held that a contract provision virtually identical to ¶ 4 effected a waiver of the wife’s right of reimbursement. However, that opinion mainly addressed the wife’s attempt to nullify the matrimonial agreement for vices of consent; it did not state the basis of her reimbursement claim. On the limited facts presented, we cannot read
 
 Barber v. Barber
 
 as authorizing a blanket waiver of reimbursement.
 

 The district court committed legal error in finding a general waiver. Gil did not waive his right to seek reimbursement of capital. The judgment will be reversed.
 

 Order of Relief
 

 By his final assignment of error, Gil argues that this court should either enter
 
 *803
 
 judgment for him on the record or remand the matter to the district court for a determination of the amount of reimbursement.
 

 The appellate court should conduct an independent
 
 de novo
 
 review only when one or more trial court legal errors interdict the fact-finding process and the appellate record is otherwise complete.
 
 S.J. v. Lafayette Parish School Bd.,
 
 2009-2195 (La.7/6/10), 41 So.3d 1119, 259 Ed. L. Rep. 353;
 
 RJAM Inc. v. Miletello,
 
 45,176 (La. App. 2 Cir. 4/14/10), 44 So.3d 283. The district court committed legal error in ruling that the agreement waived all reimbursement claims; however, this did not completely interdict the court’s fact-finding process. In the face of conflicting testimony and 11ssketchy documentation, the court found that Kim “often deposited her check into her separate account,” implying that she sometimes deposited her separate funds into the joint account; the court also found that Gil never objected to Kim’s paying the mortgage on the Hilly property from the joint account. While these findings barely scratch the surface of this complex case, they underscore the crucial role of credibility determinations in any possible resolution. The district court is in the superior position to make those credibility calls and complete the fact-finding task it has begun.
 

 We therefore remand the case to the district court for such proceedings as that court may deem appropriate to determine the proper amount of reimbursement. On remand, the parties and court are reminded that Ms. Whitelaw’s methodology was uneontradicted by any other expert evidence, but her calculations must reflect any missing check stubs or deposit slips which might possibly prove how much of Kim’s separate funds were applied to her separate property. Also, as to the Hilly property, the claim is subject to La. C.C. art. 2373, in that each spouse must contribute to the expenses of the marriage; in the absence of a specific provision, “each spouse contributes in proportion to his means.”
 
 Bergeon v. Bergeon,
 
 02-158 (La. App. 5 Cir. 5/29/02), 817 So.2d 1280,
 
 writ denied,
 
 2002-2083 (La.11/1/02), 828 So.2d 574. Gil is not entitled to reimbursement of this expense of the marriage which the law requires him to pay.
 

 Conclusion
 

 For the reasons expressed, the judgment is affirmed insofar as it denied the exceptions of prescription and no cause of action; it is reversed | ^insofar as it found the agreement waived all reimbursement claims between the parties. The case is remanded for further proceedings in accordance with this opinion and the law. Trial and appellate costs are to be paid by the appellee, Kim Colvin Birch.
 

 AFFIRMED IN PART, REVERSED IN PART, REMANDED.
 

 [1]
 

 . The couple had two daughters, born in April 1993 and in September 1996.